No. 26-1829

# United States Court of Appeals
# for the Eighth Circuit

DONNA CAVE, et al.,
*Plaintiffs-Appellees*,

THE SATANIC TEMPLE, et al.,
*Intervenors-Appellees*,

v.

COLE JESTER, in his official capacity as the
Secretary of State of Arkansas,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of Arkansas
No. 4:18-cv-342 (Hon. Kristine G. Baker)

## Defendant-Appellant's Brief

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov
noah.watson@arkansasag.gov

*Counsel for Defendant-Appellant*

Hiram S. Sasser, III
David J. Hacker
Jordan Lorence
Roger Byron
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
dhacker@firstliberty.org
jlorence@firstliberty.org
rbyron@firstliberty.org

*Additional Counsel for Defendant-Appellant*

## SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

From statehood, Arkansas has required a legislative act before a monument can be placed on its Capitol grounds. Eventually, the Legislature delegated some of the administrative work of selecting and designing monuments to, what is now called, the Capitol Arts and Grounds Commission. For years, proposals for monuments could be initiated through the Legislature or the Commission, which led to inefficiency if the Commission reviewed a proposal that ultimately failed to obtain legislative approval and was thus not placed on the Capitol Grounds (as happened in 2016). To streamline the process, the Legislature enacted Act 274 of 2017 (the "Efficiency Act"), requiring legislative approval before the Commission could consider a proposed monument. With Act 1231 of 2015 (the "Display Act"), the Legislature initiated a Ten Commandments monument to commemorate the Ten Commandments' role in American and Arkansan legal history.

The district court wrongly held the Display Act and monument violated the Establishment Clause under myriad tests, including the overruled test in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). It also incorrectly concluded the Display and Efficiency Acts violated the Equal Protection Clause because the Legislature didn't pass legislation to place the Satanic Temple's Baphomet statue on Capitol grounds.

The Secretary respectfully requests 20 minutes of oral argument.

i

# TABLE OF CONTENTS

Summary of the Case and Statement Regarding Oral Argument ...............................i

Table of Contents ...................................................................................ii

Table of Authorities...............................................................................v

Jurisdictional Statement........................................................................ 1

Statement of Issues ...............................................................................2

Statement of the Case ...........................................................................4

    A.  The Legislature streamlined the process for monuments
        on Arkansas's Capitol grounds.................................................................4

    B.  The Legislature passed the Display Act to commemorate
        the Ten Commandments' role in American and Arkansan
        legal traditions ......................................................................................7

    C.  The Commission approved the Ten Commandments
        monument ..............................................................................................8

    D.  The Satanic Temple didn't obtain legislative approval
        for its Baphomet statue ........................................................................9

    E.  Plaintiffs sued over the Ten Commandments monument, and
        the district court granted Plaintiffs' summary-judgment motions ............... 11

    F.  The district court granted Plaintiffs' summary-judgment motions.............. 13

        1.  *The district court held the Display Act violated the*
            *Establishment Clause under the* Lemon, Van Orden, *and*
            *historical-practices-and-understanding tests*................................. 13

        2.  *The district court held the Display Act and Efficiency Act*
            *violate the Equal Protection Clause*............................................. 16

Summary of the Argument................................................................19

Argument....................................................................................22

I.  Standing and Sovereign Immunity Foreclose Plaintiffs' Claims .......................22

    A. Plaintiffs lack standing to assert Establishment Clause
       claims based on alleged offense .................................................22

        1.  *Offended-observer standing violates Article III*............................22

        2.  *The Court lacks jurisdiction over Misicko's self-inflicted injury* ...................24

    B. Because the Secretary doesn't enforce the Efficiency Act,
       he is immune from equal-protection claims challenging it,
       and Plaintiffs lack standing............................................26

II. The Display Act and the Ten Commandments Monument Are
    Lawful Under the Establishment Clause .........................................27

    A. The district court wrongly applied *Lemon* ...................................27

    B. The district court wrongly concluded the Display Act and
       monument are unconstitutional under *Van Orden* and *Plattsmouth* .............34

    C. Under the historical-practices-and-understandings test, the
       Display Act and monument are constitutional............................................39

        1.  *The Display Act and monument are consistent with historical
            practices and understandings* ..................................................39

        2.  *The Display Act and monument are not unconstitutionally
            coercive* ................................................................45

III. Neither the Efficiency Act nor the Display Act Violate the
     Equal Protection Clause.................................................................49

A. Plaintiffs cannot use the Equal Protection Clause to dictate government speech ...................................................................... 49

B. Even if the Equal Protection Clause could be used to challenge government speech, the Efficiency Act and Display Act don't violate equal protection ................................................................ 52

    1. *The Efficiency Act doesn't violate equal protection* ........................ 53

    2. *The Display Act doesn't violate equal protection* ......................... 60

Conclusion ....................................................................................... 62

Certificate of Compliance ............................................................... 63

Certificate of Service ....................................................................... 64

**Cases**                                                                             **Page(s)**

*ABF Freight Sys., Inc. v. Int'l Bros. of Teamsters*,
645 F.3d 954 (8th Cir. 2011) ............................................................ 2, 24, 26

*ACLU Neb. Found. v. City of Plattsmouth*,
358 F.3d 1020 (8th Cir. 2004) .................................................................... 48

*ACLU Neb. Found. v. City of Plattsmouth*,
419 F.3d 772 (8th Cir. 2005) (en banc) ..................... 2, 8, 28, 30-31, 34-37, 48-49

*ACLU of Ohio Found., Inc. v. Ashbrook*,
375 F.3d 484 (6th Cir. 2004) .................................................................... 24

*Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*,
760 F.3d 227 (2d Cir. 2014) ..................................................................... 50

*Am. Legion v. Am. Humanist Ass'n*,
588 U.S. 29 (2019) ........................................ 7, 23, 31, 34, 38, 43-44, 48,

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens*,
496 U.S. 226 (1990) ............................................................................... 33

*Bio Gen LLC v. Sanders*,
142 F.4th 591 (8th Cir. 2025) ............................................................... 2, 26

*Brands Int'l Corp. v. Reach Cos., LLC*,
103 F.4th 501 (8th Cir. 2024) .................................................................. 22

*Carter v. Green*,
1 S.W.3d 449 (Ark. Ct. App. 1999) ........................................................... 33

*Christianson v. McLean County*,
176 F.4th 1076 (8th Cir. 2026) ................................................................. 29

*Church v. Missouri*,
913 F.3d 736 (8th Cir. 2019) .................................................................... 26

*City of Ocala v. Rojas*,
143 S. Ct. 764 (2023) ........................................................................... 2, 24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...................................................22

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .................................................. 33

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019) ...................................25-26

*Danker v. City of Council Bluffs*,
53 F.4th 420 (8th Cir. 2022) ...........................52, 59, 61

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) ....................................26

*Doe v. Parson*,
960 F.3d 1115 (8th Cir. 2020) ..................................58

*Edwards v. Aguillard*,
482 U.S. 578 (1987)................................................ 33

*Eggers v. Evnen*,
48 F.4th 561 (8th Cir. 2022)....................................58

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993)........................................... 52, 58

*FEC v. Cruz*,
596 U.S. 289 (2022)................................................ 25

*Fields v. Speaker of Penn. House of Reps.*,
936 F.3d 142 (3d Cir. 2019) ............................. 3, 50-51

*Files v. Fuller*,
44 Ark. 273 (Ark. 1884)..........................................55

*Firewalker-Fields v. Lee*,
58 F.4th 104 (4th Cir. 2023)...............................40, 44

*Freedom from Religion Found., Inc. v. City of Warren*,
707 F.3d 686 (6th Cir. 2013)....................................50

*Freedom from Religion Found., Inc. v. Obama*,
   641 F.3d 803 (7th Cir. 2011) ........................................23

*Gilmore v. County of Douglas*,
   406 F.3d 935 (8th Cir. 2005) ........................... 52-53, 58

*Groff v. DeJoy*,
   600 U.S. 447 (2023) ...................................................28

*Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*,
   136 F.4th 484 (3d Cir. 2025) ................... 40-41, 44-45

*Hinchey v. Thomasson*,
   727 S.W.2d 836 (Ark. 1987) ....................................33

*Johnson v. Poway Unified Sch. Dist.*,
   658 F.3d 954 (9th Cir. 2011) ............................ 50-51

*Keevan v. Smith*,
   100 F.3d 644 (8th Cir. 1996) ...................................55

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ................... 2, 15, 24, 27, 30, 40-41, 45

*King v. Dickinson-Reed-Randerson Co.*,
   269 S.W. 365 (Ark. 1925) .........................................54

*Kondrat'yev v. City of Pensacola*,
   949 F.3d 1319 (11th Cir. 2020) ...............................24

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
   508 U.S. 384 (1993) ...................................................28

*Larson v. Valente*,
   456 U.S. 228 (1982) ...................................................47

*Lee v. Weisman*,
   505 U.S. 577 (1992) ............................................ 41, 46

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971) ...................................................12

*Lynch v. Donnelly*,
465 U.S. 668 (1984) ........................................................ 47

*Mandrell v. Baer*,
863 F.2d 27 (8th Cir. 1988) ........................................3, 52-53, 58, 60

*Margolin v. Nat'l Ass'n of Immigration Judges*,
146 S. Ct. 1285 (2026) ................................................29-30

*Minn. Chap. of Associated Builders & Contractors v. Ellison*,
153 F.4th 695 (8th Cir. 2025) ........................................ 2, 27

*Moore v. Bryant*,
853 F.3d 245 (5th Cir. 2017)........................................50

*Mueller v. Allen*,
463 U.S. 388 (1983)........................................32

*Nat'l Endowment for Arts v. Finley*,
524 U.S. 569 (1998)........................................50

*Nathan v. Alamo Heights Indep. Sch. Dist.*,
173 F.4th 576 (5th Cir. 2026) (en banc) ................................... 32, 40, 43, 45, 47

*New Doe Child #1 v. United States*,
901 F.3d 1015 (8th Cir. 2018) ..............2-3, 28, 30, 38-39, 41-42, 45, 48, 53, 60-61

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ........................................ 38, 49, 50

*Prescott v. Okla. Capitol Pres. Comm'n*,
373 P.3d 1032 (Okla. 2015) ........................................10

*Red River Freethinkers v. City of Fargo*,
679 F.3d 1015 (8th Cir. 2012) ........................................ 23-25, 28, 30

*Red River Freethinkers v. City of Fargo*,
764 F.3d 948 (2014) (en banc)........................................ 36-37

*Rosenstiel v. Rodriguez*,
101 F.3d 1544 (8th Cir. 1996) ........................................ 3, 56

*Satanic Temple v. City of Belle Plaine*,
  80 F.4th 864 (8th Cir. 2023) ......................................................50

*Schmidt v. Ramsey*,
  860 F.3d 1038 (8th Cir. 2017).....................................................52

*SD Voice v. Noem*,
  60 F.4th 1071 (8th Cir. 2023) .....................................................58

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ............................................................ 40, 46

*Simpson v. Chesterfield Cnty. Bd. of Superiors*,
  404 F.3d 276 (4th Cir. 2005).....................................................50

*Stone v. Graham*,
  449 U.S. 39 (1980) (per curiam)................................................32

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014)................................... 2, 28, 40, 42, 78

*U.S. Dep't of Agriculture v. Moreno*,
  413 U.S. 528 (1973) ..............................................................59

*Union Pacific R.R. Co. v. Franklin*,
  687 S.W.3d 787 (Ark. 2024) ....................................................55

*United States v. O'Brien*,
  391 U.S. 367 (1968) ..................................................... 32, 56-57

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020) ..........................................................29-30

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ..............................................................53

*United States v. Steward*,
  598 F.3d 960 (8th Cir. 2010) ....................................................23

*United States v. Villareal-Amarillas*,
  562 F.3d 892 (8th Cir. 2009)................................................ 2, 23

*Valley Forge Christian Coll. v. Ams. United for Separation of Church &*
*State*,
454 U.S. 464 (1982) ........................................................................22

*Van Orden v. Perry*,
545 U.S. 677 (2005) .................................. 8, 14, 28, 31, 35-38, 43, 46, 48-49, 61

*Walls v. Sanders*,
144 F.4th 995 (8th Cir. 2025) ......................................................23

**Constitutional and Statutory Provisions**

28 U.S.C. § 1292 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

Ark. Code Ann. § 22-3-202 ...........................................................4-5

Ark. Code Ann. § 22-3-221 .................................... 8, 15, 31, 35-36, 44, 48

Ark. Code Ann. § 22-3-503 ................................. 4-6, 26-27, 54, 57

Ark. Code Ann. § 22-3-1701 ..........................................................5

Ark. Code Ann. § 22-3-1702 ..........................................................5

Ark. Code Ann. § 22-3-1703 ..........................................................5

Ark. Code Ann. § 22-3-1704 ..........................................................5

Ark. Code Ann. § 22-3-1705 ..........................................................5

U.S. Const. amend. XIV, § 1 .........................................................52

**Other Authorities**

Ark. Att'y Gen. Op. 2012-027 .......................................................33

John C. Roberts & Erwin Chemerinsky, *Entrenchment of Ordinary
Legislation: A Reply to Professors Posner and Vermule*, 91 Calif. L.
Rev. 1773 (2003) ..........................................................................55

Joseph C. Davis & Nicholas R. Reaves, *Fruit of the Poisonous* Lemon *Tree*, 96 Notre Dame L. Rev. Reflection 25 (2020) ...........................................24

Journals of the Continental Congress (Sept. 12, 1782), https://www.loc.gov/resource/llscdam.lljc023/?st=pdf&pdfPage= 116 ..............................................................................................................48

Michael W. McConnell, *Establishment & Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105 (2003)......................................................................................... 41

Nathan S. Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* (2023) .............................................................. 47

Stephanie Barclay, et al., *Original Meaning and the Establishment Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505 (2019)............... 45, 47

# Jurisdictional Statement

The district court had jurisdiction under 28 U.S.C. § 1331 and entered final judgment on March 31, 2026.  App. 4008; R. Doc. 346.  On April 29, 2026, the Secretary timely appealed, R. Doc. 349, giving this Court jurisdiction under 28 U.S.C. § 1292(a)(1).

## Statement of Issues

1. Do Plaintiffs, including someone who specifically traveled to see Arkansas's Ten Commandments monument, have standing as offended observers for their Establishment Clause claims?

Apposite Authority: *ABF Freight Sys., Inc. v. Int'l Bros. of Teamsters*, 645 F.3d 954 (8th Cir. 2011); *United States v. Villareal-Amarillas*, 562 F.3d 892 (8th Cir. 2009); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022); *City of Ocala v. Rojas*, 143 S. Ct. 764 (2023).

2. Does the Secretary of State have sovereign immunity from the equal-protection challenge to the Efficiency Act when he doesn't enforce that Act?

Apposite Authority: *Bio Gen LLC v. Sanders*, 142 F.4th 591 (8th Cir. 2025); *Minn. Chap. of Associated Builders & Contractors v. Ellison*, 153 F.4th 695 (8th Cir. 2025).

3. Do the Display Act and Ten Commandments monument on the Arkansas Capitol grounds violate the Establishment Clause?

Apposite Authority: *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022); *New Doe Child #1 v. United States*, 901 F.3d 1015 (8th Cir. 2018); *Town of Greece v. Galloway*, 572 U.S. 565 (2014); *ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772 (8th Cir. 2005) (en banc).

4.  Does placing a Ten Commandments monument on the Capitol grounds and updating the administrative process for determining what new monuments are placed on the Capitol grounds violate the Equal Protection Clause?

<u>Apposite Authority</u>:  *Fields v. Speaker of Penn. House of Reps.*, 936 F.3d 142 (3d Cir. 2019); *Mandrell v. Baer*, 863 F.2d 27 (8th Cir. 1988); *Rosenstiel v. Rodriguez*, 101 F.3d 1544 (8th Cir. 1996); *New Doe Child #1 v. United States*, 901 F.3d 1015 (8th Cir. 2018).

### A. The Legislature streamlined the process for monuments on Arkansas's Capitol grounds.

From Arkansas's earliest days, monuments required legislative approval before being placed on Capitol grounds. *See, e.g.*, 1851 Ark. Acts 143-44 ("An Act to provide for the erection of a suitable monument to the memory of the late Archibald Yell and others."). The Legislature originally would enact a unique process for each monument, from the composition of the design committee to funding and appropriations. *Id.* Eventually, it delegated day-to-day upkeep of Capitol grounds to the Secretary of State, *see* Ark. Code Ann. § 22-3-202(a), and details of the monument-erection process to what's now known as the "Capitol Arts and Grounds Commission," *id.* § 22-3-502(a)(1). The Commission must "review and recommend to the Secretary … the location of monuments, memorials, fountains, and similar improvements on the State Capitol grounds" and "the relocation of existing monuments, memorials, and fountains." *Id.* § 22-3-503(a)(2). The Secretary then "report[s]" and "make[s] recommendations" "to each General Assembly" about the "Capitol Building," and its "grounds, furniture, and fixtures." *Id.* § 22-3-202(b).

The Legislature retained ultimate authority over what monuments are placed on the Capitol grounds. *See* Ark. Act 665 of 1987, §§ 5, 6 ("[N]o State agency shall undertake a capital improvement project," which includes "memorials, fountains,

4

monuments, sculpture[s], and other works of art," "on the State Capitol grounds unless the project is first submitted to and approved by the General Assembly."). The monument-approval process, however, could be initiated by applying with Commission until early 2017, or by legislation. *See, e.g.*, Ark. Code Ann. §§ 22-3-1701–1705 (Fallen Firefighters' Memorial); 22-3-216 (Law Enforcement Officers' Memorial). And some legislation excluded the Commission entirely. *See id.* § 22-3-219 (War Veterans Monument).

If a proposed monument was initiated by application to the Commission and successfully completed the Commission's process, the Secretary could "write a bill and [attempt to] find … a [legislative] sponsor" so the Legislature could vote on whether to approve the new monument. App. 1214; R. Doc. 260-24, at 64. But even when the Commission "recommend[ed] approval of [a] monument," the "Secretary could say no" and end the process before it reached the Legislature. App. 1212; R. Doc. 260-24, at 62; *compare* Ark. Code Ann. § 22-3-503(a)(2) (Commission makes recommendations to Secretary), *with id.* § 22-3-202(b) (Secretary makes recommendations to Legislature). Until February 2017, the Commission could consider any proposal, but no monument could be placed "on the State Capitol grounds" without "an act of the General Assembly." Ark. Act 1043 of 1997, § 3 (previously codified at Ark. Code Ann. § 22-3-503(c)).

In February 2017, the Legislature enacted Act 274 (the "Efficiency Act"), moving legislative approval of monuments to the beginning of the process and prohibiting the Commission from considering new proposals without prior legislative approval. Ark. Code Ann. § 22-3-503(c). But if a proposed monument obtained legislative approval, then the Commission would exercise design discretion and place a proposed monument, generally following the same process as it had pre-Efficiency Act. App. 1216, 1218; R. Doc. 260-24, at 66, 68.

The Efficiency Act prevents wasted "time and money" that would occur when the "Commission … approve[d]" a proposed monument that "d[id]n't get a legislative bill." App. 1241; R. Doc. 260-24, at 91. For example, in 2016, the Commission received up to nine proposals. App. 1164, 1327; R. Doc. 260-24, at 14, 177. It formed multiple subcommittees and held multiple hearings for the proposed monuments. App. 1165; R. Doc. 260-24, at 15. And when some monuments didn't receive legislative approval after the Commission expended resources, "an awful lot of work," "time[,] and money" was "wasted." App. 1240-41; R. Doc. 260-24, at 90-91. Therefore, as the former chair of the Commission testified, the Efficiency Act "makes sense." App. 1240; R. Doc. 260-24, at 90.

**B.     The Legislature passed the Display Act to commemorate the Ten Commandments' role in American and Arkansan legal traditions.**

Ten Commandments monuments are common throughout the Nation, from state capitol grounds and city halls to public libraries and parks. *See* App. 733-43; R. Doc. 260-3, at 48-58. These monuments' ubiquity reflects the Ten Commandments' "historical significance as one of the foundations of our legal system." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019). In 2015, the Arkansas Legislature decided the Arkansas Capitol grounds should have a Ten Commandments monument and passed Act 1231 (the "Display Act"). Garnering 42 legislative sponsors, App. 683; R. Doc. 260-2, at 1, the Display Act initiated placement of the Ten Commandments monument, like other legislatively initiated monuments on the Capitol grounds, *see supra* 5.

In enacting the Display Act, the Legislature found "[t]he Ten Commandments … are an important component of the moral foundation of the laws and legal system of the United States … [and] of Arkansas." Ark. Act 1231 of 2015, § 1. It determined that, to commemorate their vital role in "influencing the development of … modern law," "a monument of the Ten Commandments [should be] on the [Capitol] grounds" to "help" Arkansans understand the Ten Commandments' foundational role. *Id.* §§ 4-5

To that end, the Legislature directed the Secretary to "arrange for … a suitable monument commemorating the Ten Commandments" on the Capitol grounds "where there are other monuments," and instructed that the new monument include text from the "monument[s] declared constitutional in *Van Orden v. Perry*, 545 U.S. 677 (2005)," Ark. Code Ann. § 22-3-221(b)(1), (2)(B), and in *ACLU Nebraska Foundation v. City of Plattsmouth*, 419 F.3d 772 (8th Cir. 2005) (en banc).  The Secretary was charged with selecting the design, location, and other necessary details in "consult[ation] [with] the … Commission."  Ark. Code Ann. § 22-3-221(b)(4)(A).

### C.    The Commission approved the Ten Commandments monument.

After the Display Act became law, the American History and Heritage Foundation applied to donate a Ten Commandments monument complying with the Act's requirements.  *See* App. 1390; R. Doc. 260-27, at 6.  The proposal went "through the process" that application-initiated proposals went through, except for specific deviations required by the Display Act.  App. 1247; R. Doc. 260-24, at 97. As part of that process, the Commission held at least two subcommittee hearings and a public hearing; fielded hundreds of phone calls, letters, and emails; received online comments; and held two full-Commission meetings.  App. 1268, 1284-85, 1317; R. Doc. 260-24, at 118, 134-35, 167.

More than a year after the American History and Heritage Foundation applied, the Commission concluded its process and approved the monument. App. 1575-76; R. Doc. 260-33, at 12-13. In June 2017, the Ten Commandments monument was installed, App. 3761; R. Doc. 286, at 17, but the next day, a man intentionally destroyed the monument, App. 1270; R. Doc. 260-24, at 120; App. 3762; R. Doc. 286, at 18. The Foundation donated a second monument, which was subsequently installed in April 2018. App. 3878-79; R. Doc. 345, at 19-20.

**D.     The Satanic Temple didn't obtain legislative approval for its Baphomet statue.**

Meanwhile, a few days after the American History and Heritage Foundation applied to the Commission to donate its Ten Commandments monument in August 2016, the Satanic Temple applied to place a Baphomet statute. *See* App. 1363-67; R. Doc. 260-25. The proposed statue had an enthroned "goat-headed, angel-winged, androgynous creature" with a pentagram on its forehead and children at each knee. App. 1364, 1367; R. Doc. 260-25, at 2, 5. The Satanic Temple requested its statue be placed "[n]ext to the proposed 10 Commandments monument (within 20 feet)" or "[d]irectly in front of the proposed 10 Commandments monument (within 1 foot)." App. 1366; R. Doc. 260-25, at 4.

Once it received the Satanic Temple's application, the Commission began its usual process. During that process, the Satanic Temple noted it intended to

"withdraw" its application "[i]f the Ten Commandments monument does not go up." App. 1490; R. Doc. 260-31, at 38. This withdrawal alternative was consistent with what the Satanic Temple did in Oklahoma when it withdrew its request for a Baphomet statue after a Ten Commandments monument was removed from the Oklahoma Capitol grounds based on a state-law conflict. App. 1822; R. Doc. 260-41, at 34; *Prescott v. Okla. Capitol Pres. Comm'n*, 373 P.3d 1032, 1034 (Okla. 2015).

The Commission advanced the Satanic Temple's proposal to the public-hearing stage but noted the Commission couldn't "move[] forward" with placing the monument without "legislative approval." App. 1640-41; R. Doc. 260-36, at 12-13. Before the public hearing could be scheduled, the Efficiency Act went into effect, pausing the Commission's process until legislative approval, *see supra* 4-6. If the Baphomet statue had obtained legislative approval, the Commission's process would have resumed where it left off. App. 1164; R. Doc. 260-24, at 14; App. 1580; R. Doc. 260-33, at 17.

But the Satanic Temple didn't obtain legislative approval. Nor did it try to, other than sending two emails to all legislators, insinuating legal action if they didn't sponsor the Baphomet statue. App. 2438-39; R. Doc. 260-52, at 10-11; App. 2154; R. Doc. 260-46.

**E.      Plaintiffs sued over the Ten Commandments monument, and the district court granted Plaintiffs' summary-judgment motions.**

In May 2018, two lawsuits were filed against the Secretary.  Donna Cave was the lead plaintiff in one case, R. Doc. 20, and Anne Orsi was the lead plaintiff in the other, Complaint, *Orsi v. Jester*, No. 4:18-cv-343 (E.D. Ark. May 23, 2018), ECF No. 1.  Both suits alleged the Ten Commandments monument and the Display Act violated the Establishment Clause.  *See* R. Doc. 20; Complaint, *Orsi v. Jester*, No. 4:18-cv-343 (E.D. Ark. May 23, 2018), ECF No. 1.  The district court consolidated the cases.  R. Doc. 14.

Several months later, the Satanic Temple, Doug Misicko, and Erika Robbins ("Satanic Temple Plaintiffs") intervened, alleging violations of the Establishment Clause.  R. Doc. 38; R. Doc. 89.  Satanic Temple Plaintiffs later amended their complaint to include an equal-protection claim, based on their failure to get legislative approval for the Baphomet statue under the Efficiency Act and the Display Act's approval of the Ten Commandments monument.  R. Doc. 89, at 7-9.  As a remedy, they requested either: (a) "place[ment] [of] the Baphomet Monument; or" (b) "remov[al] [of] the Ten Commandments Monument and [a permanent injunction against] enforc[ement] [of] the … Display Act."  *Id.* at 9.

Plaintiffs and the Secretary filed cross-motions for summary judgment.  The Secretary argued Plaintiffs improperly relied on offended-observer standing, which

"the Supreme Court never adopted" and is now "obsolete" after *Kennedy* "expressly overruled *Lemon v. Kurtzman*, 403 U.S. 602 (1971)." R. Doc. 258, at 16. And he argued Plaintiffs lacked standing because they attempted to "manufacture standing" by "purposefully s[eeking] out the Ten Commandments monument." *Id.* at 16-17.

On the merits of the Establishment Clause claim, the Secretary explained the district court should apply *Kennedy*'s "historical practices and understandings" test, instead "of the obsolete *Lemon* and 'endorsement' tests." *Id.* at 22 (citation omitted). Under the historical-practices-and-understandings test, "[t]he Ten Commandments monument plainly fits within the longstanding tradition of displaying the Ten Commandments on public grounds across the Nation." *Id.* at 24. And on the merits of the Equal Protection Clause, the Secretary reasoned the Clause doesn't apply to government speech, *id.* at 24-25, and even if it did apply, the Satanic Temple wasn't denied equal protection because the Efficiency and Display Acts treat all equally, *id.* at 25-27. Finally, any potentially differential treatment was supported by a rational basis in efficiency, saving time and money for the Commission and groups proposing a monument, and in commemorating America's and Arkansas's legal history. *Id.* at 27-30; *see supra* 6 (explaining the administrative efficiencies).

**F.     The district court granted Plaintiffs' summary-judgment motions.**

Over three years after the parties' summary-judgment motions, the district court granted Plaintiffs' summary-judgment motions and denied the Secretary's. App. 3860-4007; R. Doc. 345.  The district court held Plaintiffs had offended-observer standing and hadn't impermissibly manufactured standing, without mentioning one Plaintiff came from Massachusetts to see Arkansas's Ten Commandments monument.  App. 3907, 3911; R. Doc. 345, at 48, 52.  The district court also held Satanic Temple Plaintiffs had standing to bring their equal-protection claim. App. 3916-19; R. Doc. 345, at 57-60.

> ***1.   The district court held the Display Act violated the Establishment Clause under the* Lemon, Van Orden, *and historical-practices-and-understanding tests.***

Regarding the Establishment Clause claims, the district court applied *Lemon*, even though "the parties d[id] not advocate for" it, the Supreme Court "abrogated" it, and appellate courts haven't recently relied on it.  App. 3931; R. Doc. 345, at 72. The district court reasoned *Lemon* applied because it wasn't "express[ly] over-rul[ed]" "in all contexts," but only "abrogate[ed]." *Id.*  The district court then held the Display Act and monument violate *Lemon* and the "the so-called 'endorsement test,'" which is a *Lemon* offshoot.  App. 3937; R. Doc. 345, at 78.

As backup, the district court purportedly applied *Van Orden*, which explained that *Lemon* "was 'not useful in dealing with the sort of passive monument'" of the Ten Commandments on Texas's Capitol grounds. *Id.* (quoting *Van Orden*, 545 U.S. at 686 (plurality)). Although *Van Orden* held the monument on Texas's Capitol grounds didn't violate the Establishment Clause and the Eighth Circuit's *Plattsmouth* opinion held a different Ten Commandments monument didn't violate the Establishment Clause, the district court reached the opposite conclusion here. It determined those cases were distinguishable because Arkansas's "[m]onument is new" and was challenged shortly after installation. App. 3939; R. Doc. 345, at 80. The district court also found those cases distinguishable because different donors funded those monuments, App. 3940; R. Doc. 345, at 81, and "the Ten Command-ments is isolated from other monuments," App. 3941; R. Doc. 345, at 82—somehow missing that its citation shows another monument across the sidewalk from the Ten Commandments monument, App. 1452; R. Doc. 260-30. Finally, the district court concluded *Van Orden* and *Plattsmouth* were inapposite based on unidentified "com-ments and actions" by Senator Rapert; unspecified non-textual aspects of the mon-ument's "design"; and its determination that the Display Act was "divisive." App. 3942-43; R. Doc. 345, at 83-84.

Concluding its Establishment Clause analysis, the district court turned to (and misapplied) *Kennedy*'s purported "suggest[ion]" that "the Establishment Clause must be interpreted by 'reference to historical practices and understanding.'" App. 3943-44; R. Doc. 345, at 84-85 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022)). Though the core of *Kennedy*'s test is the "hallmarks of religious establishments," which demonstrate "impermissible coercion," *Kennedy*, 597 U.S. at 537, the district court didn't mention the hallmarks. And the district court refused to consider the Nation's long-enduring "public acknowledgements of religion"; instead, it considered only state legislation for "placement of a new, stand-alone monument on State Capitol grounds specifying the exact text of the Ten Commandments and 'commemorating the Ten Commandments.'" App. 3948-49; R. Doc. 345, at 89-90 (quoting Ark. Code Ann. § 22-3-221). Based on that narrow inquiry, the district court concluded historical practices don't support the Display Act. App. 3952; R. Doc. 345, at 93.

The district court then purported to analyze whether the Display Act is impermissibly coercive. It first held the Display Act is ambiguous because it "mandates the placement of a new, stand-alone" Ten Commandments monument, while also "purport[ing] to disclaim" Arkansas is "favoring any particular religion or denomination over others." App. 3960; R. Doc. 345, at 101. Reasoning that supposed

ambiguity necessitated the "task" of delving into the legislative history, the district court went far afield of considering legislators' floor statements or committee hearings. *Id.* It looked to one bill sponsor's former jobs as "a hospice chaplain and a church pastor," App. 3962; R. Doc. 345, at 103, another sponsor's Twitter and Facebook posts and nonprofit work, App. 3963-66, 3970; R. Doc. 345, at 104-07, 111, a local newspaper article's "headline," App. 3964; R. Doc. 345, at 105, and which organizations donated to the monument's construction, App. 3965; R. Doc. 345, at 106. The district court then concluded this "record evidence" contradicted the Legislature's enacted purpose to commemorate the Ten Commandments' role in the America's and Arkansas's legal tradition. App. 3960-63; R. Doc. 345, at 101-04. So the district court held the Display Act "impermissibly promotes the Ten Commandments and conveys an intent to favor Christian religion in violation of the Establishment Clause." App. 3974; R. Doc. 345, at 115.

### 2. *The district court held the Display Act and Efficiency Act violate the Equal Protection Clause.*

Turning to the Equal Protection Clause, the district court held the government-speech doctrine inapplicable, not as a legal matter, but because of this case's "unique facts and circumstances," "specifically the passage of the Display Act" and the Efficiency Act with an emergency clause. App. 3977; R. Doc. 345, at 118. On the means-ends analysis, the district court concluded the Display and Efficiency Acts

weren't "neutral" toward religion. App. 3997-98; R. Doc. 345, at 138-39. Based on unspecified "record evidence," the district court reasoned the Display Act "favored Christianity" while the Efficiency Act "adversely affected" the Satanic Temple. App. 3998; R. Doc. 345, at 139. In addition, it reasoned the Efficiency Act exhibited "hostility towards" the Satanic Temple because the Act (1) "deprived" the Satanic Temple of the potential opportunity for the Secretary to present the Baphomet statue proposal to the Legislature; and (2) made it "politically improbable" the statue would be placed on Capitol grounds based on "adverse statements" about the Satanic Temple by some legislators. *Id.* The district court seemingly concluded this alleged hostility and lack of neutrality "disparate[ly] impact[ed]" the Satanic Temple as "a protected class." App. 3999; R. Doc. 345, at 140.

Similarly, the district court mentioned unspecified "record evidence" to conclude the Legislature had an unlawful discriminatory intent toward the Baphomet statue when it passed the Display and Efficiency Acts. App. 3999-4000; R. Doc. 345, at 140-41. It again relied on one legislator's statements made close in time to the passage of the Efficiency Act. App. 4000; R. Doc. 345, at 141. The district court thus decided to "infer discriminatory intent and apply strict scrutiny." App. 4001; R. Doc. 345, at 142.

The district court, however, concluded the Display and Efficiency Acts fail any level of scrutiny and violated equal protection. App. 4001-05; R. Doc. 345, at 142-46. In applying strict scrutiny, the district court didn't analyze the Display Act but concluded both Acts failed strict-scrutiny review. App. 4001-02; R. Doc. 345, at 142-43. Then, on rational-basis review, the district court rejected the Secretary's asserted interests, without even considering whether the asserted interests were legitimate. App. 4002-03; R. Doc. 345, at 143-44. Ultimately, the district court ordered the "removal of the Ten Commandments Monument." App. 4005; R. Doc. 345, at 146.

As a preliminary matter, Plaintiffs' Establishment Clause standing hinges on their offense at the Ten Commandments' monument. But offended-observer standing is unmoored from Article III, and with *Lemon*'s downfall, offended-observer precedent has been cast into doubt. This Court should thus hew to Article III's requirements and conclude Plaintiffs lack standing for their Establishment Clause claims, especially Plaintiff Misicko who intentionally sought out the monument.

Moreover, the Secretary retains sovereign immunity from the equal-protection challenge to the Efficiency Act. That Act merely sequences legislative approval to occur before the Commission considers a proposed monument, and the Secretary has no independent authority to enforce it. That not only means that Plaintiffs have failed to overcome his immunity for their Efficiency Act challenge, but also that they lack standing because the alleged injury from that Act isn't traceable to him.

Regardless, Plaintiffs' suit fails on the merits. The Display Act and Ten Commandments monument don't violate the Establishment Clause. The district court reached a contrary conclusion after applying the *Lemon* test, even though the Supreme Court has overruled *Lemon*, its progeny, and its endorsement-test offshoot. Although neither side advocated for *Lemon*, the district court applied it *sua sponte* and treated the religious views, employment histories, social-media posts, and

nonprofit activities of a few legislators as evidence the Display Act was unconstitutional. That approach contravenes the party-presentation principle and governing Establishment Clause standard.

The district court's alternative analysis from *Van Orden* fails too. Permanent Ten Commandments monuments are part of a longstanding national tradition of acknowledging the Commandments' historical influence on American law. The Supreme Court and this Court have held materially similar monuments are constitutional, and the Display Act drew from those precedents. Yet the district court improperly distinguished those cases based on matters such as the monument's age, the identity of donors who contributed to the monument, and cherrypicked statements by one legislator.

The district court eventually purported to apply *Kennedy*'s historical-practices-and-understandings test, but it misunderstood and misapplied that test. Properly applied, that test asks whether the Display Act and monument resemble the coercive hallmarks of a religious establishment. They don't, so there's no Establishment Clause problem.

The equal-protection claims also fail because permanent monuments on government property are government speech. Arkansas may select the messages it wishes to express through monuments on its Capitol grounds; private parties have

no equal-protection right to force the State to display their preferred monument or to prevent the State from displaying a message with which they disagree. The district court wrongly held the government-speech doctrine inapplicable based on the purportedly "unique" circumstances here, without explaining why those circumstances displaced the governing rule.

Even apart from the government-speech issue, the Display and Efficiency Acts don't violate equal protection. The Efficiency Act applies the same legislative-approval requirement to every proposed monument and rationally advances administrative efficiency by preventing the Commission and applicants from expending resources on proposals that never obtain legislative approval. The Display Act similarly creates no suspect classification. It authorizes a monument commemorating the Ten Commandments' role in U.S. and Arkansas legal traditions—a legitimate governmental purpose rationally advanced by a monument. The district court reached the opposite conclusion only by rejecting the Legislature's enacted purposes and misapplying rational-basis review. Because Plaintiffs failed to establish jurisdiction or a constitutional violation, this Court should reverse and render judgment for the Secretary.

The Court "review[s] *de novo* the district court's resolution of cross-motions for summary judgment, viewing the evidence in the light most favorable to the non-moving party and giving the nonmoving party the benefit of all reasonable inferences." *Brands Int'l Corp. v. Reach Cos., LLC*, 103 F.4th 501, 504 (8th Cir. 2024). At the summary-judgment stage, plaintiffs "bear[] the burden of establishing standing" with "specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (citation omitted).

## I. STANDING AND SOVEREIGN IMMUNITY FORECLOSE PLAINTIFFS' CLAIMS.

Because Plaintiffs lack standing and cannot overcome sovereign immunity, the district court should have dismissed Plaintiffs' claims.

### A. Plaintiffs lack standing to assert Establishment Clause claims based on alleged offense.

#### 1. Offended-observer standing violates Article III.

Plaintiffs assert standing for their Establishment Clause claims based on allegedly offensive encounters with the Ten Commandments monument. In other words, they rely on offended-observer standing. But offense is simply a "psychological consequence presumably produced by observation of conduct with which one disagrees," and that's "not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Valley Forge Christian*

22

*Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 485-86 (1982); *Freedom from Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011) ("[H]urt feelings differ from legal injury."). This Court, however, has held offensive contact with a monument can be sufficient for Establishment Clause standing. *E.g.*, *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1024 (8th Cir. 2012).

But this Court's offended-observer precedent has been "cast into doubt." *Walls v. Sanders*, 144 F.4th 995, 1004 (8th Cir. 2025); *United States v. Steward*, 598 F.3d 960, 962 (8th Cir. 2010). Under the cast-into-doubt standard, this Court "may reconsider a prior panel's decision if a supervening Supreme Court decision 'undermines or casts doubt on the earlier panel decision,'" not simply "if a supervening Supreme Court decision is clearly irreconcilable." *United States v. Villareal-Amarillas*, 562 F.3d 892, 898 n.4 (8th Cir. 2009) (citation omitted). The Supreme Court's express rejection of *Lemon* in *Kennedy* has created doubt about the correctness of this Court's and other courts' offended-observer cases.

As Justice Gorsuch explained, "the fault" for offended-observer cases stems from the Supreme Court's *Lemon* decision, which led "lower courts [to] reason[] that, if the Establishment Clause forbids anything a reasonable observer would view as an endorsement of religion, then such an observer must be able to sue." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 84 (2019) (Gorsuch, J., concurring); *see*

Joseph C. Davis & Nicholas R. Reaves, *Fruit of the Poisonous* Lemon *Tree*, 96 Notre Dame L. Rev. Reflection 25, 29-32 (2020).  With the overruling of "*Lemon* and its endorsement offshoot," *Kennedy*, 597 U.S. at 534, "'little excuse' now remains 'for the anomaly of offended observer standing.'"  *City of Ocala v. Rojas*, 143 S. Ct. 764, 765 (2023) (Gorsuch, J., respecting denial of certiorari) (citation omitted).  Because "[o]ffended observer standing appears to warp the very essence of the judicial power vested by the Constitution," *id.* at 766-68 (Thomas, J., dissenting from denial of certiorari), this Court should do away with it.  *See, e.g.*, *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1334-38 (11th Cir. 2020) (Newsom, J., concurring); *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 497 n.3 (6th Cir. 2004) (Batchelder, J., dissenting).  And if it does so, then all Establishment Clause claims must be dismissed as they stem from nothing more than alleged offense.

### 2. The Court lacks jurisdiction over Misicko's self-inflicted injury.

Even assuming offended-observer standing exists, Misicko didn't establish standing for his Establishment Clause claim.  He must prove a "personal injury fairly traceable to [the Secretary's] allegedly unlawful conduct" that's "likely to be redressed by the requested relief."  *Red River*, 679 F.3d at 1022-23 (citation omitted).  A self-inflicted injury isn't sufficient for standing because it cannot "satisfy the traceability prong," *ABF Freight Sys., Inc. v. Int'l Bros. of Teamsters*, 645 F.3d 954,

24

961 (8th Cir. 2011), or the injury-in-fact prong, *see Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 541 (5th Cir. 2019) ("successful efforts to locate aesthetically displeasing pollution" don't create "an aesthetic injury in fact").  Thus, courts lack Article III jurisdiction when a plaintiff "voluntarily tak[es]" actions he wouldn't have taken but for his "attempt[] to manufacture standing."  *FEC v. Cruz*, 596 U.S. 289, 297 (2022).

That's the case here.  Misicko is from Massachusetts, App. 3895; R. Doc. 345, at 36, and learned about the Ten Commandments monument at a conference.  App. 3822; R. Doc. 290, at 5.  Before preparing for this litigation, he had never been to the Capitol grounds, *id.*, and only recalled being in Arkansas once, App. 2211; R. Doc. 260-50, at 27.  Misicko came to Arkansas's Capitol specifically "[t]o see the Ten Commandments monument be installed" and for "[no] other reason."  App. 2238; R. Doc. 360-50, at 54.  After the installation, Misicko was "offended."  App. 2245; R. Doc. 260-50, at 61.

In short, Misicko is an "out-of-towner[] who … read about [Arkansas's] display and 'disagree[d]' with it."  *Red River*, 679 F.3d at 1024.  He "voluntarily" traveled across the country to see and be offended by Arkansas's Ten Commandments monument to "manufacture standing."  *Cruz*, 596 U.S. at 297.  The Court therefore lacks jurisdiction over his Establishment Clause claim because he didn't establish an

injury in fact and traceability. *See ABF Freight*, 645 F.3d at 961; *Ctr. for Biological Diversity*, 937 F.3d at 540-41.

**B.  Because the Secretary doesn't enforce the Efficiency Act, he is immune from equal-protection claims challenging it, and Plaintiffs lack standing.**

The Secretary has sovereign immunity from the equal-protection challenge to the Efficiency Act.  To overcome that immunity, Plaintiffs needed to show the Secretary has "a sufficient connection to" to the Act by identifying a "method[] of enforcement." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 604 (8th Cir. 2025) (quoting *Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019)).  Plaintiffs didn't make that showing because the Secretary doesn't enforce the Efficiency Act.  That also means Plaintiffs lack standing to challenge the Efficiency Act, because their alleged injury "is not 'fairly traceable'" to the Secretary. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015).

The Efficiency Act re-sequenced legislative approval of monuments on Capitol grounds to occur before the Commission can consider the details of a proposed monument, instead of legislative approval coming after the Commission's consideration. *See* Ark. Code Ann. § 22-3-503(c).  The Secretary doesn't enforce that sequencing. *See id.* § 22-3-503.  Although the Secretary is one of the ten Commission members, *see id.* § 22-3-502(a)(2)(B), he isn't the Commission itself and has no

independent statutory authority to act for it. *See id.* § 22-3-503. He doesn't appoint a majority of the Commission's members, *see id.*, and even if he did, that would be insufficient to overcome sovereign immunity, *cf. Minn. Chap. of Associated Builders & Contractors v. Ellison*, 153 F.4th 695, 699 (8th Cir. 2025) (holding "[a]ppointing or removing commissioners is too far removed from enforcement to bring the Governor within the *Ex parte Young* exception" (citation modified)).

The Secretary is thus entitled to sovereign immunity from the equal-protection challenge to the Efficiency Act, and Plaintiffs lack standing for their challenge.

## II. THE DISPLAY ACT AND THE TEN COMMANDMENTS MONUMENT ARE LAWFUL UNDER THE ESTABLISHMENT CLAUSE.

The district court's Establishment Clause analysis is flawed across the board. After erroneously applying obsolete tests from *Lemon* and *Van Orden*, it compounded its errors by applying the applicable historical-practices-and-understanding test in name only, while essentially recycling its erroneous *Lemon* and *Van Orden* analyses.

### A. The district court wrongly applied *Lemon*.

Recently, the Supreme Court placed the final nail in *Lemon*'s coffin, explaining it had "long ago abandoned *Lemon* and its endorsement test offshoot." *Kennedy*, 597 U.S. at 534. It "instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Id.* (citation omitted). The

dissent recognized the mandatory nature of the instruction, confirming *Kennedy* "overrul[es] *Lemon* entirely and in all contexts." *Id.* at 572 (Sotomayor, J., dissenting); *see Groff v. DeJoy*, 600 U.S. 447, 460 (2023) (confirming *Lemon*'s demise).

This Court correctly recognized the Supreme Court's abandonment of *Lemon*, even before *Kennedy*, holding *Lemon* wasn't "useful in dealing with the[se] sort[s] of passive monuments." *Red River*, 679 F.3d at 1018 (alterations in original) (quoting *Van Orden*, 545 U.S. at 685-86 (plurality)); *see Plattsmouth*, 419 F.3d at 778 n.8 (for a Ten Commandments monument, "we do not apply the *Lemon* test"). And following *Galloway*, this Court has generally hewed to the Supreme Court's "unequivocal directive" that "[t]he Establishment Clause *must* be interpreted by reference to historical practices and understandings." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1020 (8th Cir. 2018) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)) (emphasis in original).

Yet, surprisingly, Justice Scalia's words remain evergreen. Despite "[i]ts most recent burial," "*Lemon* stalks our Establishment Clause jurisprudence once again." *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring).

Below, "the parties d[id] not advocate for … the *Lemon* test," and the district court itself recognized "that *Lemon* was abrogated." App. 3931; R. Doc. 345, at 72.

But the district court nevertheless questioned whether *Lemon* was overruled "in all contexts," *sua sponte* resurrected *Lemon*, and held "[t]he Display Act and the Ten Commandment[s] Monument violate the Establishment Clause under … *Lemon*." *Id.* at 72, 78. That was error for three reasons.

*First*, federal courts must "adhere to the principle of party presentation." *Margolin v. Nat'l Ass'n of Immigration Judges*, 146 S. Ct. 1285, 1288 (2026). Under that principle, it is the parties' job "to 'frame the issue for decision'" and the courts' job to "decide 'only the questions presented.'" *Id.* (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). Thus, "points not argued will not be considered." *Id.* (citation omitted). And courts shouldn't "adopt[] theories of a plaintiff's case that he does not advance, much less one that he expressly disclaims." *Christianson v. McLean County*, 176 F.4th 1076, 1087 (8th Cir. 2026) (citation omitted).

Neither Plaintiffs nor the Secretary argued *Lemon* applied. Indeed, Plaintiffs admitted that *Lemon* has been "discarded," R. Doc. 265, at 8, and is "defunct," R. Doc. 282, at 5, and that its "continued viability" is irrelevant to this case, R. Doc. 289, at 5. Despite Plaintiffs "expressly disclaim[ing]" that *Lemon* applies, *Christianson*, 176 F.4th at 1087 (citation omitted), the district court "decided 'a case different from the one [Plaintiffs] advanced' … without giving either side a chance to address

its theory." *Margolin*, 146 S. Ct. at 1288 (citation omitted). This was reversible error, because the party-presentation principle prohibits federal courts from "sally[ing] forth each day looking for wrongs to right." *Sineneng-Smith*, 590 U.S. at 376, 380 (citation omitted).

*Second*, *Lemon* isn't controlling. Indeed, this Court, decades ago, acknowledged—twice—that *Lemon* isn't "useful" when analyzing passive Ten Commandment displays. *Red River*, 679 F.3d at 1018 (citation omitted); *see Plattsmouth*, 419 F.3d at 778 n.8. And this Court adopted a historical analysis under *Galloway* even before *Kennedy*, at least where there wasn't a different "directly applicable" test. *New Doe Child*, 901 F.3d at 1019-20 & n.8. Whatever doubt before *Kennedy* about how to "reconcile" some of the "Supreme Court's earlier pronouncements" with "*Galloway*'s emphasis on historical understanding," *id.* n.8, *Kennedy* has removed all doubts: "An analysis focused on original meaning and history" is "the rule rather than some 'exception within the Court's Establishment Clause jurisprudence.'" *Kennedy*, 597 U.S. at 536 (citation omitted). Because the historical-practices-and-understandings test is "the rule," *id.*, it applies in all contexts, and *Lemon*'s "ahistorical" approach has been overruled in all contexts despite the district court's contrary reasoning, *id.* at 534.

*Third*, even if *Lemon* applied, the district court's analysis is flawed. Under *Lemon*, a challenged action is constitutional if "(1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it doesn't foster an excessive entanglement with religion." *Plattsmouth*, 419 F.3d at 775. The Display Act and monument pass this defunct test.

As the Display Act explains, "[t]he Ten Commandments … are an important component of the moral foundation of the [United States' and Arkansas's] laws and legal system." Ark. Act 1231 of 2015, § 1. And the Legislature determined the monument would "help" Arkansans understand that "moral foundation," *id.*, without "favor[ing] any particular religion or denomination over others," Ark. Code Ann. § 22-3-221(d). The Supreme Court agrees. While the Ten Commandments have "religious significance," they have also played an important "role … in our Nation's heritage." *Van Orden*, 545 U.S. at 688-90 (plurality). Their "historical significance as one of the foundations of our legal system" is beyond dispute, and their depictions across "prominent public buildings" and in the Supreme Court's own "courtroom" "serve secular purposes," despite the "religious associations." *Am. Legion*, 588 U.S. at 53, 60.

Yet the district court rejected the legislative findings and Supreme Court's analysis to infer an unconstitutional intent and hold *Lemon*'s first two prongs were

violated—despite the "reluctance" courts were supposed to have even under *Lemon* "to attribute unconstitutional motives to the states." *Mueller v. Allen*, 463 U.S. 388, 394 (1983). Ignoring that "[i]nquiries into congressional motives or purposes are a hazardous matter" and "[w]hat motivates one legislator … is not necessarily what motivates scores of others to enact it," *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968), the district court relied heavily on Senator Rapert who was an "organizer[]" of the American History and Heritage Foundation and "made comments regarding the religious nature of the Ten Commandments" before and after introducing the Display Act. App. 3934-35; R. Doc. 345, at 75-76. Based on that evidence, combined with the Legislature not repealing the Act it had just passed when "the local newspaper[]" ran a story, some constituents "object[ing]," Senator Rapert negatively "comment[ing] on the Baphomet monument," and the now-abrogated decision in *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam),[1] the district court concluded the Display Act's primary purpose and effect was religious. App. 3934-37; R. Doc. 345, at 75-78.

---

[1] *See Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 583 (5th Cir. 2026) (en banc) (holding "there is nothing left of *Stone*" after "the Supreme Court jettisoned *Lemon* and its offspring" (citation omitted)).

The district court violated blackletter law by failing to give proper weight to the Legislature's findings—*i.e.*, enacted law[2]—explaining the Display Act's purpose is to acknowledge the historical significance of the Ten Commandments, not to promote one religion over another or nonreligion.  *See* Act 1231 of 2015, § 1.  As the Supreme Court "has repeatedly stated, the text of the law controls over purported legislative intentions unmoored from any statutory text'; [courts] 'may not replace the actual text with speculation as to Congress' intent.'"  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) (citations omitted).  In any event, whether a single legislator may have had "religious *motives*" is irrelevant even under *Lemon*'s purpose prong, where "what is relevant is the legislative *purpose* of the statute."  *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 249 (1990) (plurality).[3]  And contrary to the district court's footnote analysis of the equally

---

[2] The district court's believed uncodified legislative findings are not law.  App. 3961; R. Doc. 345, at 102 & n.128.  But, in Arkansas, "[t]he fact [a] provision is not codified does not deprive it of the force of law" or "indicate that the act is invalid."  *Carter v. Green*, 1 S.W.3d 449, 451-52 (Ark. Ct. App. 1999); *see Hinchey v. Thomasson*, 727 S.W.2d 836, 838 (Ark. 1987) ("[T]he absence of an act in the statutes does not indicate that act is invalid."); Ark. Att'y Gen. Op. 2012-027 ("these provisions remain in effect notwithstanding that they were not codified").

[3] The district court cited *Edwards v. Aguillard*, 482 U.S. 578 (1987), to defend its reliance on a bill sponsor's comments to determine the law's purpose.  App. 3935; R. Doc. 345, at 76.  But *Edwards* applied *Lemon* and discussed the sponsors'

overruled endorsement offshoot of *Lemon*, an objective observer would recognize a Ten Commandments display has historical and secular significance, which is why they are ubiquitous in courtrooms and on government property. *See, e.g.*, *Am. Legion*, 588 U.S. at 53 (Ten Commandments have "historical significance" and "depictions" in "public buildings were intended to serve secular purposes"); *Plattsmouth*, 419 F.3d at 778 n.8 (concluding *Lemon* didn't apply and, if it did, Plattsmouth's monument would pass the *Lemon* test).

In short, the Supreme Court overruled *Lemon*, so the district court erred by applying it. And even if *Lemon* were resurrected, the district court erred by violating the party-presentation principle, overlooking the enacted legislative findings, and disregarding precedent acknowledging Ten Commandments displays serve secular purposes.

### B. The district court wrongly concluded the Display Act and monument are unconstitutional under *Van Orden* and *Plattsmouth*.

Presumably seeking to buttress its *Lemon*-based defiance of the Supreme Court, the district court also concluded that the Display Act and monument are unconstitutional under *Van Orden* and *Plattsmouth*. This was another error. The

---

comments "[d]uring the legislative hearings," 482 U.S. at 587, 592, not a sponsor's social-media posts that weren't before the legislature.

district court erred by not applying the historical-practices-and-understandings test. *See supra* 27-28, 30, *infra* 39-49. Regardless, the district court's *Van Orden* and *Plattsmouth* analysis was flawed. Both cases rejected Establishment Clause claims to Ten Commandments monuments, and both confirm the Display Act and monument are constitutional.

"[A] display of the Ten Commandments on government property outside" of a State Capitol, like one provided by the Display Act, is a constitutional "acknowledgement[] of the role played by the Ten Commandments in our Nation's heritage." *Van Orden*, 545 U.S. at 688 (plurality). It was constitutional on Texas's Capitol grounds, *id.*, and outside Plattsmouth's city hall, *Plattsmouth*, 419 F.3d at 776-77, and it's constitutional here. Indeed, the reason for Arkansas's monument is to acknowledge the Ten Commandments' role as "an important component of the moral foundation of the laws and legal system." Act 1231 of 2015, § 1(1). And the version of the Ten Commandments on Arkansas's monument is identical, by design, to the version in *Van Orden*, Ark. Code Ann. § 22-3-221(b)(1). That version was crafted by a committee determined "to find a nonsectarian text[,] underscore[ing]" how the monument conveys a historical and secular message, not a purely religious one. *Van Orden*, 545 U.S. at 701 (Breyer, J., concurring); *Plattsmouth*, 419 F.3d at 773 ("nonsectarian version"). So too does the monument's context. Like the *Van*

*Orden* monument, Arkansas's monument must stand with "other monuments" on the Capitol grounds, Ark. Code Ann. § 22-3-221(b)(2)(B),[4] and being near the Capitol "does not readily lend itself to mediation or any other religious activity," but rather "provide[s] a context of history and moral ideals," *Van Orden*, 545 U.S. at 702 (Breyer, J., concurring). Arkansas's Ten Commandments monument isn't "different in any constitutionally significant way" from the *Van Orden* or *Plattsmouth* monuments. *Plattsmouth*, 419 F.3d at 778.

The district court wrongly concluded otherwise, noting Plaintiffs didn't "wait many years before challenging the monument," unlike in *Van Orden* and *Plattsmouth*. App. 3939; R. Doc. 345, at 80. But the amount of time a monument goes unchallenged was not an express factor that the Supreme Court plurality considered in *Van Orden* or that this Court considered in *Plattsmouth.* Although Justice Breyer considered the length of time of the monument went unchallenged as one factor, *Van*

---

[4] Even if the district court were right that Arkansas's monument is isolated, it wouldn't be unconstitutional. Indeed, this Court refused to hold Fargo's Ten Commandment display unconstitutional, despite the dissent's argument that, unlike "in *Van Orden*, no other monuments share the Civic Plaza." *Red River Freethinkers v. City of Fargo*, 764 F.3d 948, 953 (2014) (en banc) (Bye, J., dissenting). Similarly, in *Plattsmouth*, the Court held the monument was constitutional despite being, "as far as [the Court] know[s], the only monument in the forty-five-acre City park." 419 F.3d at 777 n.7.

*Orden*, 545 U.S. at 702-03 (Breyer, J., concurring), he didn't imply what the district court here wrongly inferred: a short amount of time between installment and challenge creates a presumption of *un*constitutionality.[5]  Moreover, this Court has properly refused to hold "an Establishment Clause dispute *itself* can render a monument impermissible under the Establishment Clause." *Red River*, 764 F.3d at 950. If anything, requiring the monument to be removed despite its undisputed historical significance based on the claimed offense of a few challengers when such monuments exist at countless other Capitols and city halls (and when the original Ten Commandments monument has been vandalized and destroyed) would show "a hostility toward religion" in Arkansas "that has no place in our Establishment Clause traditions." *Van Orden*, 545 U.S. at 704 (Breyer, J., concurring).

The district court also considered it constitutionally significant that the American History and Heritage Foundation and others the court perceived as religious donated Arkansas's monument, while the Fraternal Order of the Eagles donated other monuments.  App. 3940-41; R. Doc. 345, at 81-82.  But donors' motivations aren't imputed to the government.  To the contrary, by accepting a donation, the

---

[5] This Court has taken its "cue" from both "Chief Justice Rehnquist's opinion for the Court and Justice Breyer's concurring opinion in *Van Orden*." *Plattsmouth*, 419 F.3d at 778 n.8.

government doesn't "necessarily endorse the specific meaning that any particular donor sees in the monument." *Pleasant Grove City v. Summum*, 555 U.S. 460, 476–77 (2009); *see Am. Legion*, 588 U.S. at 54 (recognizing motivations can differ). And the district court unsurprisingly cited no authority that a private donor's degree of religiosity is relevant to the analysis, App. 3940-41; R. Doc. 345, at 81-82, given "[t]he Constitution does not prevent the Government from promoting and 'celebrat[ing] our tradition of religious freedom,' even if the means of doing so … was motivated in 'part because of religious sentiment,'" *New Doe Child*, 901 F.3d at 1023. In any event, the district court overlooked that the *Van Orden* donor was "interested in the religious aspect of the Ten Commandments" too, not just the historical and secular ones. *Van Orden*, 545 U.S. at 701 (Breyer, J., concurring).

Finally, the district court insists the Display Act and one legislator's statements make this case distinguishable from *Van Orden* and *Plattsmouth*. While it's true those cases don't discuss a monument's enacting legislation or a legislator's statements, the district court's reliance on (and mischaracterization of) one legislator's statements was legal error. *See supra* 32-34. Further, the district court is wrong there hasn't been legislation to commemorate "any other secular idea," App. 3941, R. Doc. 345, at 82, because since Arkansas's early days of statehood, monuments placed on the Capitol grounds required legislation, *see supra* 4 (Archibald Yell

monument on old Capitol grounds).  Furthermore, the law's plain text disproves the

district court's conclusion that the Display Act was only about commemorating the

Ten Commandments, not Arkansas's "religious heritage or the development of the

law."  *Id.*  The Display Act expressly concludes the Ten Commandments "are an

important component of the moral foundation" of our "legal system," were im-

portant to "many founders of this nation" and to "many Arkansans and other Amer-

icans today," and were influential in "the development of … modern law."  Act 1231

of 2015, § 1.  Thus, if anything, the Display Act bolsters the constitutionality of Ar-

kansas's monument under *Van Orden* and *Plattsmouth*; it doesn't undermine it.

> **C.    Under the historical-practices-and-understandings test, the Display Act and monument are constitutional.**

Although the Display Act and monument are constitutional even under *Lemon*

and *Van Orden*, those aren't the relevant tests.  *Galloway* and *Kennedy* mandate that

courts apply the historical-practices-and-understandings test, which the Display Act

and monument pass.

> ### 1. The Display Act and monument are consistent with historical practices and understandings.

Under the historical-practices-and-understandings test, if "history shows that

the specific practice is permitted," courts "typically need go no further; the Estab-

lishment Clause claim fails."  *New Doe Child*, 901 F.3d at 1021 (quoting *Galloway*,

572 U.S. at 577).  But if "history has not spoken to the 'specific practice' at hand," then courts "look to the historical understandings of the Establishment Clause as informed by other relevant practices." *Id.*  Courts must accordingly focus on "original meaning and history," assessing whether the challenged practice or law implicates the "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Kennedy*, 597 U.S. at 536-37; *see supra* 28.

Three circuits have distilled the relevant inquiry following *Kennedy*: "Have plaintiffs proven a set of facts that would have historically been understood as an establishment of religion?"  *Nathan*, 173 F.4th at 594 (citation modified); *see Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 n.54 (3d Cir. 2025); *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023).  That requires plaintiffs to prove a challenged law or practice resembles the six hallmarks of a religious establishment: (1) exerting control over an established church's doctrine or personnel, (2) mandating church attendance, (3) punishing anyone for their religious exercise, (4) "restrict[ing] political participation by dissenters," (5) financially supporting an established church, or (6) giving an established church a monopoly over a civil function.  *Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring in judgment); *see Kennedy*, 597 U.S. at 537 & n.5 (discussing "hallmarks of religious establishments" and citing to Justice Gorsuch's *Shurtleff* concurrence,

Justice Scalia's *Lee v. Weisman*, 505 U.S. 577 (1992), dissent, and Professor McConnell's scholarship); Michael W. McConnell, *Establishment & Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2144-46 (2003). And even assuming *Shurtleff*'s six hallmarks aren't "an exhaustive list of practices that violate the Establishment Clause," then plaintiffs have the "burden to expand" the list by "proving a set of facts that would have historically been understood as an establishment of religion." *Hilsenrath*, 136 F.4th at 491 n.54.

Although the district court partially recited the test from *New Doe Child* and *Galloway*, App. 3944-45; R. Doc. 345, at 85-86, it ignored *Kennedy*'s instruction to use the hallmarks analysis. Instead, it reasoned that, if a challenged practice or law isn't identical to a historical tradition, it violates the Establishment Clause. *See* App. 3948-52, R. Doc. 345, at 89-93. But those cases do *not* support the proposition that "any modern practice *not* supported by a founding-era tradition" is unconstitutional. *Nathan*, 173 F.4th at 606-07. Instead, courts must consider "other relevant practices," *New Doe Child*, 901 F.3d at 1021, and the "hallmarks of religious establishments." *Kennedy*, 597 U.S. at 536-37.

The district court wrongly refused to consider other relevant practices demonstrating that the Display Act and monument are consistent with historical practices. It insisted the question is narrowly focused on "whether 'history shows

41

that the specific practice is permitted,' not whether a general practice is permitted."

App. 3948; R. Doc. 345, at 89 (quoting *Galloway*, 572 U.S. at 577). But that approach

ignores this Court's directive that, when the history doesn't address the "specific

practice," courts must analyze "the historical understanding … as informed by *other*

relevant practices." *New Doe Child*, 901 F.3d at 1021 (emphasis added) (quoting

*Galloway*, 572 U.S. at 577). And it ignores this Court's and the Supreme Court's

example of looking to historical practices other than the specific challenged action.

For example, the *New Doe Child* plaintiffs challenged "the specific practice of

placing 'In God We Trust' on U.S. money," which "did not begin until 1864 and

was not uniform across all currency until almost a century later." 901 F.3d at 1021.

In holding the inscription constitutional, this Court relied on various other practices:

the First Congress's "appoint[ment] and pay[ment] of official chaplains"; President

Washington "proclaim[ing] a day of public thanksgiving and prayer" because of the

"favours of Almighty God"; the Northwest Territory Ordinance of 1787's emphasis

on the necessity of religion; and—not least—"our founding documents," which

"protect rights that were thought to derive from God." *Id.* at 1022 (citations omit-

ted). Based on the general "unbroken history" of recognizing religion's role, the

Court found that "[p]lacing 'In God We Trust' on coins and currency is consistent

with historical practices." *Id.* at 1022, 1023. Similarly, when addressing a challenge

to a World War I memorial cross, the Supreme Court looked not only to memorial crosses, but also considered "Ten Commandments monuments," which "have historical significance as one of the foundations of our legal system," legislative prayer, Washington's proclamation, and the Northwest Territory Ordinance. *Am. Legion*, 588 U.S. at 53.

Government acknowledgements of religion and God are prevalent throughout our Nation's history—including on government property. *See* App. 733-43; R. Doc. 260-3, at 48-58 (state capitol grounds, city halls, public libraries, public parks). There are more recent examples, like a three-story-tall memorial cross, *id.* at 43, and Ten Commandments monuments on state capitol grounds, *Van Orden*, 545 U.S. at 681 (plurality). And there are older examples, like Moses holding the Ten Commandments in the Library of Congress since 1897. *See id.* at 689 (listing examples). Even Plaintiffs' purported expert admits that "[i]t is axiomatic that many of the principles contained in the Ten Commandments are fundamental to the Western legal tradition … of which the American legal system is part." Steven Green, *The Fount of Everything Just & Right? The Ten Commandments as a Source of American Law*, 14 J.L. & Religion 525, 525 (1999-2000).[6]

---

[6] The Court cannot "outsource to 'experts' [its] Article III duty to decide questions of law," *Nathan*, 173 F.4th at 607, which the district court at least partially did, *see* App. 3950; R. Doc. 345, at 91. Plaintiffs' purported expert demonstrates the

That broader context shows some "[religious] symbol[s] ha[ve] also taken on … secular meaning," *id.* at 39, like the Ten Commandments, which "have historical significance as one of the foundations of our legal system." *Id.* at 53. The Display Act recognizes that "[t]he Ten Commandments … are an important component of the moral foundation of" America's and Arkansas's "legal system." Act 1231 of 2015, § 1. It doesn't "favor any particular religion or denomination over others" to commemorate the Ten Commandments' role in that history. Ark. Code Ann. § 22-3-221(d). The district court thus erred by concluding the Display Act and monument fail the historical-practices-and-understandings test.

In any event, it's not the Secretary's burden to prove the Display Act and monument are constitutional, but rather Plaintiffs' burden to prove they are unconstitutional because they resemble the historical hallmarks. *See Firewalker-Fields*, 58 F.4th at 123; *Hilsenrath*, 136 F.4th at 491 n.54. Plaintiffs didn't prove the Act and monument bear any hallmark, much less that they constitute an establishment when

---

problem. Although he previously recognized the Ten Commandments' role in our legal system, he changed his position for litigation. *Compare* Green*, supra* at 525 ("[T]he Ten Commandments are fundamental to the Western legal tradition … of which the American legal system is part."), *with* App. 229 ("lack of historical support for the proposition that the Ten Commandments serve as a basis for American law"). But legal questions aren't subject to experts' whims, especially when the Supreme Court has acknowledged Ten Commandments' "significance as one of the foundations of our legal system." *Am. Legion*, 588 U.S. at 53.

the hallmarks are "considered in the aggregate." *Hilsenrath*, 136 F.4th at 494-95 & n.3 (Phipps, J., concurring); *see* Stephanie Barclay, et al., *Original Meaning and the Establishment Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505, 509-10 (2019). That's unsurprising because, like another state law regarding Ten Commandments displays, the Display Act and monument "plainly lack[] the features of founding-era establishments." *Nathan*, 173 F.4th at 601. The district court was thus wrong to conclude they violate the Establishment Clause.

### 2. The Display Act and monument are not unconstitutionally coercive.

The district court also concluded the Display Act and monument violate the Establishment Clause because they are coercive, treating coercion as a free-floating factor untethered from history. App. 3952-74; R. Doc. 345, at 93-115. But that's wrong. "[O]ffense … does not equate to coercion." *New Doe Child*, 901 F.3d at 1023-24 (citation omitted). Instead, "attention to coercion" "highlights what [the Establishment Clause] has long been understood to prohibit," *id.* at 1020—a challenged law or practice bearing the "hallmarks of a religious establishment," *Kennedy*, 597 U.S. at 537.

For example, "coercion" like mandatory church attendance and participation in formal religious exercises were "among the foremost hallmarks of religious establishments the framers sought to prohibit." *Id.*; *see id.* n.5 (favorably citing Justice

Gorsuch's *Shurtleff* concurrence and Justice Scalia's *Lee* dissent); *Shurtleff*, 596 U.S. at 286 (Gorsuch, J., concurring) (explaining "most of these [six] hallmarks reflect forms of coercion" (citation modified)); *Lee*, 505 U.S. at 640-42 (Scalia, J., dissenting) (explaining the Establishment Clause addresses legal coercion, not peer pressure or psycho-coercion). Plaintiffs have failed to prove the Display Act or monument resemble these hallmarks or any other. *See supra* 39-45.

Regardless, even if the coercion inquiry were untethered from history, the district court's foray into purported legislative intent, funding of the monument, and repackaging of its *Lemon* and *Van Orden* analyses fail to show Plaintiffs proved any unconstitutional coercion.[7] A passive Ten Commandments monument (and the Display Act that authorized it) on Capitol grounds "involves no coercion and thus does not violate the Establishment Clause." *Van Orden*, 545 U.S. at 694 (Thomas, J., concurring). A passerby "need not stop to read it or even to look at it, let alone to express support for it or adopt the Commandments as guides for his life." *Id.* The Display Act and monument "impose[] neither penalty nor sanction, formal or

---

[7] The district court's purported legislative-intent and purpose analysis is also flawed for the reasons explained, including its reliance on cherrypicked statements and disregard of enacted legislative findings. *See supra* 32-34.

informal," and those who disagree with the message they perceive can "ignore" or "laugh at" that message. *Nathan*, 173 F.4th at 601.

Nor is the Display Act coercive because it "impermissibly promotes the Ten Commandments and conveys an intent to favor Christian religion." App. 3974; R. Doc. 345, at 115. To start, government displays with religious significance don't impermissibly favor a particular religion or religion over non-religion. *See, e.g., Lynch v. Donnelly,* 465 U.S. 668, 687 n.13 (1984) (rejecting argument that a city's ownership and display of a crèche "as explicitly discriminatory in the sense contemplated in *Larson* [*v. Valente*, 456 U.S. 228 (1982)]"); *id.* at 678 (recognizing the Court has refused to "mechanically invalidat[e] all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith"). Indeed, "the government's use of religious text, displays, or symbols" hasn't historically been understood as a religious establishment, *Nathan*, 176 F.4th at 602 (citing Nathan S. Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* 159 (2023), and Barclay, et al., *supra* at 509-10), which is unsurprising given "religious placenames dot the landscape and religious mottos, symbols, and flags adorn countless public buildings," *Nathan*, 176 F.4th at 603 (collecting cases).

If government recognitions, like displays or legislative prayers, violated the

Establishment Clause whenever they included references particular to only some faith traditions, countless cases would have come out differently. *See, e.g.*, *New Doe Child*, 901 F.3d at 1022 (rejecting argument that having "In God We Trust" on currency "privileges monotheism"); *Plattsmouth*, 419 F.3d at 777-78 (collecting cases where government recognition of religious content was upheld). These cases reflect the obvious: "[T]here is nothing unconstitutional in a State's favoring religion generally, honoring God through public prayer and acknowledgment, or, in a nonproselytizing manner, venerating the Ten Commandments." *Van Orden,* 545 U.S. at 692 (Scalia, J., concurring); *see Am. Legion*, 588 U.S. at 76-77 (Thomas, J., concurring) ("[A]n insistence on nonsectarian' religious speech is inconsistent with our Nation's history and traditions." (quoting *Galloway*, 572 U.S. at 578)); *see also* Journals of the Continental Congress 574 (Sept. 12, 1782), https://www.loc.gov/resource/llscdam.lljc023/?st=pdf&pdfPage=116 (Congress recommending a particular "edition of the Bible to the inhabitants of the United States").

In any event, the Display Act isn't denominationally preferential. It explicitly provides that Arkansas doesn't "favor[] any particular religion or denomination over others," Ark. Code Ann. § 22-3-221(d), and selected text identical to the "nonsectarian version[s]" in *Plattsmouth* and *Van Orden. Plattsmouth*, 419 F.3d at 773; *see ACLU Neb. Found. v. City of Plattsmouth*, 358 F.3d 1020, 1024-25 (8th Cir. 2004)

(providing text), *vacated by en banc reh'g*, 419 F.3d 772; *Van Orden*, 545 U.S. at 701 (Breyer, J., concurring) (explaining "members of several faiths" coordinated "to find a nonsectarian text"); *id.* at 707 (Stevens, J., dissenting) (providing text).

*    *    *

The district court's Establishment Clause analysis is flawed throughout. It resurrected *Lemon*, misapplied the analysis in *Van Orden* and *Plattsmouth*, and never correctly applied the controlling historical-practices-and-understandings test. Because the Display Act and monument are consistent with historical practices and understandings, they don't violate the Establishment Clause.

### III. NEITHER THE EFFICIENCY ACT NOR THE DISPLAY ACT VIOLATE THE EQUAL PROTECTION CLAUSE.

The district court also erred in concluding the Display and Efficiency Acts violate equal protection.

#### A. Plaintiffs cannot use the Equal Protection Clause to dictate government speech.

Satanic Temple Plaintiffs' equal-protection challenge fails at the threshold because "[p]ermanent monuments displayed on public property typically represent government speech." *Summum*, 555 U.S. at 470. And, as at least six Circuits have

49

held, the Equal Protection Clause isn't a mechanism to challenge government speech.[8]

Placement of the Ten Commandments monument, as required by the Display Act, was a legislative decision about a specific permanent monument on the Capitol grounds. And the Efficiency Act was a legislative decision about the process to determine what monuments to place. As the Supreme Court has explained, a State is "entitled to say what it wishes and to select the views that it wants to express." *Summum*, 555 U.S. at 467-68 (citations omitted). Indeed, "[i]t is the very business of government to favor and disfavor points of view." *Nat'l Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring in judgment). Because Plaintiffs

---

[8] *See Fields v. Speaker of Penn. House of Reps.*, 936 F.3d 142, 161 (3d Cir. 2019) ("the Equal Protection Clause doesn't apply to government speech"); *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017) (the necessary Article III injury "is differential governmental treatment, not differential governmental messaging"); *Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 760 F.3d 227, 246 (2d Cir. 2014) ("[i]ndividuals will generally not be heard to complain that government speech favors one viewpoint over another"); *Freedom from Religion Found., Inc. v. City of Warren*, 707 F.3d 686, 698 (6th Cir. 2013) ("the customary answer to permissible government speech" is "to urge [officials] to" alter their speech "or to try to elect new officials"); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011) ("[I]ndividuals … have no personal interest in government speech on which to base an equal protection claim." (citations omitted)); *Simpson v. Chesterfield Cnty. Bd. of Superiors*, 404 F.3d 276, 288 (4th Cir. 2005) ("government speech [is] 'subject only to the proscriptions of the Establishment Clause'" (citation omitted)); *cf. Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 869 (8th Cir. 2023) (no equal-protection claim where the Satanic Temple couldn't obtain a permit to place a statue).

have no equal-protection right to compel government speech (*e.g.*, forcing placement of Baphomet) or to prevent the government from speaking (*e.g.*, prohibiting the Ten Commandments monument), they "could not have suffered an equal protection violation." *Johnson*, 658 F.3d at 975. Thus, Plaintiffs' claims fail either on the merits or due to an inability to establish an Article III injury-in-fact. *See Fields*, 936 F.3d at 160 (collecting cases, some of which ruled on standing while others ruled on the merits).

The district court, however, held the government-speech doctrine didn't apply because of this case's "unique facts and circumstances." App. 3977; R. Doc. 345, at 118. But to say a case is different than others is axiomatic; the question is whether the legal principle (*i.e.*, government speech) applies to this case's claim (*i.e.*, an equal-protection violation). The government-speech doctrine applies here, and the district court's contrary conclusion was error.

This Court should correct that error and join other circuits holding equal-protection challenges to government speech fail because the Equal Protection Clause addresses "differential governmental treatment, not differential governmental messaging." *Moore*, 853 F.3d at 250. Plaintiffs cannot smuggle their doomed Establishment Clause claim into an equal-protection packaging.

**B.    Even if the Equal Protection Clause could be used to challenge government speech, the Efficiency Act and Display Act don't violate equal protection.**

Even if a means-ends equal-protection analysis were necessary, the Display and Efficiency Acts are constitutional. The Fourteenth Amendment prohibits States from denying "the equal protection of the laws." U.S. Const. amend. XIV, § 1. The "threshold matter" in an equal-protection challenge is whether "some government action caused [the plaintiff] to be treated differently from others similarly situated"—*i.e.*, whether a similarly situated plaintiff is subject to some "classification" different from others. *Gilmore v. County of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005) (citation omitted). When "no classification exists," the analysis can end. *Mandrell v. Baer*, 863 F.2d 27, 28 (8th Cir. 1988) (per curiam). And laws with a classification "must be upheld … if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," if the classification isn't "along suspect lines" and doesn't "infringe[] fundamental constitutional rights." *Danker v. City of Council Bluffs*, 53 F.4th 420, 423 (8th Cir. 2022) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Only laws that classify "on the basis of a suspect class, such as race, or 'impinge[s] on personal rights protected by the Constitution'" receive strict scrutiny. *Schmidt v. Ramsey*, 860 F.3d 1038, 1047 (8th Cir. 2017) (citation omitted).

### 1. *The Efficiency Act doesn't violate equal protection.*

*The Efficiency Act doesn't create classifications or discriminate.* The Fourteenth Amendment's provision that "person[s]" receive "equal protection of the laws" is a "demand[] that similarly situated individuals be treated alike." *New Doe Child*, 901 F.3d at 1027 (citation omitted). Thus, while "most legislation classifies for one purpose or another," *United States v. Skrmetti*, 605 U.S. 495, 509 (2025), legislation that doesn't classify doesn't implicate the Equal Protection Clause, *cf. Mandrell*, 863 F.2d at 28. In other words, a plaintiff must first "establish that some government action caused her to be treated differently from others similarly situated." *Gilmore*, 406 F.3d at 937.

The Efficiency Act doesn't classify or differentiate between people; it establishes a neutral process for the State to determine what monuments to place on the Capitol grounds. Indeed, the district court recognized the Efficiency Act is "facially neutral." App. 4005; R. Doc. 345, at 146. Yet it appears to have continued with the equal-protection analysis because it believed the Satanic Temple was "adversely affected" by the Efficiency Act since it "made it politically improbable that [the Satanic Temple] would ever get its monument placed." App. 3998; R. Doc. 345, at 139. That's wrong on two fronts.

First, the district court misunderstood what the Efficiency Act did: the Act merely changed the order in which legislative approval of permanent monuments must be obtained—from the end of the process to the beginning—to save the Commission's and applicants' resources. *See supra* 4-6. The district court disagreed, apparently based on (a) its belief the prior statute required the Legislature to approve any monument approved by the Commission, App. 3991, 3996; R. Doc. 345, at 132, 137; and (b) various facts, such as comments from Senator Rapert, the Satanic Temple engaging in the process before the Efficiency Act, and one monument obtaining legislative approval after the Efficiency Act, App. 3992-97; R. Doc. 345, at 133-38. Neither ground is right.

Regarding the previous version of Arkansas Code § 22-3-503(c),[9] it allowed placement of new monuments only after legislative approval; it didn't mandate that the Legislature approve any monument authorized by the Commission. That's the best reading of the statute's plain text and is required by constitutional avoidance. To interpret the statute as the district court did would mean the prior version of the statute was unconstitutional because "one Legislature cannot bind subsequent Legislatures." *King v. Dickinson-Reed-Randerson Co.*, 269 S.W. 365, 366 (Ark. 1925); *see*

[9] "Any monument on the State Capitol grounds approved by the commission must be authorized by an act of the General Assembly." Act 1043 of 1997, § 3.

*Files v. Fuller*, 44 Ark. 273, 280 (Ark. 1884) ("[N]o Legislature has power … to fix for future Legislatures any limits of power as to the effect of their action."); John C. Roberts & Erwin Chemerinsky, *Entrenchment of Ordinary Legislation: A Reply to Professors Posner and Vermule*, 91 Calif. L. Rev. 1773, 1783 (2003) (noting almost "uniform[] condemn[ation]" of "the idea of [legislative] entrenchment").

Regarding the various facts the district court cited, they are irrelevant because the Efficiency Act isn't ambiguous, so courts shouldn't "look beyond [its] plain wording." *Union Pacific R.R. Co. v. Franklin*, 687 S.W.3d 787, 791 (Ark. 2024). The Efficiency Act is clear: it only rearranges the previous process, increasing efficiency. *See supra* 4-6. It doesn't create a new, insurmountable hurdle for the Satanic Temple or anyone else. Indeed, another proposed monument (the Gold Star monument) "was also affected by the [Efficiency] Act," as the Satanic Temple admitted, and completed the process. R. Doc. 271, at 19 n.9. Accordingly, the Efficiency Act didn't adversely impact Satanic Temple Plaintiffs, they needed legislative approval for the Baphomet statue even absent the Act.

Second, the district court didn't acknowledge (or apply) the relevant equal-protection analysis. A "facially neutral" law violates the Equal Protection Clause only if it "has a disproportionately adverse effect upon" a class and "that impact can be traced to a discriminatory purpose." *Keevan v. Smith*, 100 F.3d 644, 650 (8th Cir.

1996).  But the Satanic Temple and the district court bypassed that analysis to "infer discriminatory intent."  App. 4001; R. Doc. 345, at 142.  Without citation, the district court said that, "[f]or the reasons explained in this Opinion and Order, the undisputed record" supports the discriminatory-intent finding.  App. 3999; R. Doc. 345, at 140.  It is unclear what in its 148-page order the district court was referencing.  Perhaps it meant to refer to Senator Rapert's comments that purportedly "persuade[d] the Arkansas General Assembly to pass [the Efficiency Act] with an emergency clause about one month after the … Commission Subcommittee approved the Baphomet monument" to proceed to public hearing.  App. 3995-96; R. Doc. 345, at 136-37.  But both this Court and the Supreme Court have been clear that, without more, courts cannot use an "individual legislator['s]" statements to "infer the intent of th[e] entire legislative body."  *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1552 (8th Cir. 1996).  A law that's "constitutional on its face" shouldn't be held unconstitutionally motivated based on "what fewer than a handful of [legislators] said about it."  *O'Brien*, 391 U.S. at 384; *see supra* 32-34.

Yet the district court was exceedingly concerned with one senator, Senator Rapert, mentioning him throughout the order.  It even included a five-page section about his background, occupation, nonprofit and ministry work, religious beliefs, social-media statements, and contact information.  App. 3885-90; R. Doc. 345, at 26-

31; *see* App. 3994, 3995; R. Doc. 345, at 136, 137 (implying legislators didn't sponsor a Baphomet bill because of the Efficiency Act "and Senator Rapert's declaration on Facebook" (citation omitted)). Even ignoring the district courts' mischaracterization of Senator Rapert, his actions, and his statements, it had only "guesswork" about other legislators, and it was error to infer from that guesswork a Legislature-wide discriminatory purpose. *O'Brien*, 391 U.S. at 384. The Efficiency Act thus contains no classification and doesn't discriminate against Satanic Temple Plaintiffs.

*Even if the Efficiency Act created a classification, it is constitutional.* If the Efficiency Act creates a classification, it's one based on whether a proposed monument obtains (or doesn't obtain) legislative approval. *See* Ark. Code Ann. § 22-3-503(c) (requiring "an act of the General Assembly" for a monument to be placed). Neither the district court nor the Satanic Temple identified precedent that having obtained legislative approval or not is a suspect classification.

The district court, however, concluded that Satanic Temple Plaintiffs "are a suspect class for Equal Protection purposes." App. 3989; R. Doc. 345, at 130. But the question is whether the Efficiency Act *classifies* along that suspect line, not whether Plaintiffs can claim some suspect class irrelevant to the law's classification. Thus, the district court erred by starting and ending at the question of whether the Satanic Temple belongs to some suspect class; it failed to determine whether the

Efficiency Act classified along the asserted classification. *See Mandrell*, 863 F.2d at 28.[10]

Because the Efficiency Act doesn't classify along suspect lines, it's subject to the "highly deferential" rational-basis standard and is constitutional if "someone could rationally conclude that the law furthers a legitimate government interest." *Eggers v. Evnen*, 48 F.4th 561, 566 (8th Cir. 2022) (citation omitted). And the Legislature's choice need not be "[]supported by evidence or empirical data," so long as "rational speculation" would conclude that the choice furthered the government's interest. *Gilmore*, 406 F.3d at 937 (quoting *Beach Commc'ns*, 508 U.S. at 315).

As explained, the Efficiency Act streamlines the process of placing and removing monuments on the Capitol grounds. *See supra* 4-6. The district court was silent on whether efficiency is a legitimate interest, but this Court has held "administrative efficiency … is a legitimate interest." *SD Voice v. Noem*, 60 F.4th 1071, 1081 (8th Cir. 2023). Thus, the only question is whether it's rational to conclude the Efficiency Act furthers administrative efficiency. *See Eggers*, 48 F.4th at 566. It is.

---

[10] It also erred by concluding Plaintiffs proved the Satanic Temple belongs to a suspect class. "Only beliefs rooted in religion are protected by the Free Exercise Clause." *Doe v. Parson*, 960 F.3d 1115, 1119 n. 3 (8th Cir. 2020); *see id.* (declining to decide whether Satanists have religious beliefs). Yet Plaintiffs didn't prove the Satanic Temple is a religion. *See, e.g.*, App. 2081-82; R. Doc. 260-44, at 11-12 ("less of a church and more of an affinity group"). Indeed, "[t]he Baphomet statue ha[d] a wholly secular purpose." App. 1787; R. Doc. 260-40, at 2.

Instead of wasting the Commission' resources on reviewing proposed monuments that may never obtain legislative approval, the Efficiency Act moves legislative approval to the front of the process, so the Commission only expends resources on monuments that will be placed. *See supra* 4-6.

Concluding otherwise, the district court believed the rational-basis test allowed it to "employ[] a highly contextual, fact-based analysis balancing private rights and public interest." App. 4004; R. Doc. 345, at 145. From there, the district court held the Efficiency Act "is not related to its stated purpose of government efficiency" based on the Legislature's supposed, unspoken "desire" to prevent the Baphomet statue. *Id.* The district court believed beefed-up rational-basis analysis was appropriate under *U.S. Department of Agriculture v. Moreno*, 413 U.S. 528 (1973). *Id.* But *Moreno* involved (1) a disparity between the *enacted* purposes and the *enacted* text, and (2) the government's failure to identify any extratextual purpose that aligned with the text. 413 U.S. at 533-36. That's not the situation here: the Efficiency Act's text does enhance administrative efficiency. *See supra* 4-6. Because there's a "conceivable state of facts" that the Efficiency Act meets the goal of government efficiency, it satisfies rational-basis review. *Danker*, 53 F.4th at 423 (citation omitted).

### *2. The Display Act doesn't violate equal protection.*

The district court's analysis of the Display Act fails for similar reasons. For one, it doesn't facially classify. It instead directs that a Ten Commandments monument with certain specifications be placed on the Capitol grounds. Like placing "the inscription of 'In God We Trust' on U.S. coins and currency" does "not create any express or implied classifications," *New Doe Child*, 901 F.3d at 1027, neither does placing a Ten Commandments monument on Capitol grounds. The analysis can end there. *See Mandrell*, 863 F.2d at 28. Moreover, the Ten Commandments monument met the same requirements that the Baphomet statute had to meet under the Efficiency Act and that another monument did meet: legislative authorization and Commission review. *See supra* 55. Thus, the monuments were treated alike, not differently.

Even if the Display Act created classifications, the classification would, like with the Efficiency Act, be between monuments that have obtained legislative approval and those that have not, which is not a suspect class. *See supra* 57-58. That means the Display Act is also subject to rational-basis review. The Display Act's purpose was to commemorate the Ten Commandments' role as a "foundation of the laws and legal systems of the United States … [and] Arkansas." Act 1231 of 2015, § 1. Acknowledging the Ten Commandments' role is a legitimate government

interest that's common throughout American government—from an 1897 statue of Moses with the Commandments in the Library of Congress to various acknowledgements by all three government branches. *Van Orden*, 545 U.S. at 689-90 (plurality). Placing a commemorative monument is rationally related to that end.

Regardless, if the Ten Commandments' religious nature were relevant, that too provides a sufficient basis. Governments have a "legitimate goal [in] honoring religion's role in American life and in the protection of fundamental rights." *New Doe Child*, 901 F.3d at 1028. Creating a monument that simultaneously recognizes the Ten Commandments' importance to our legal tradition, like placing "In God We Trust" inscriptions on coinage, is "rationally related" to Arkansas's interest. *Id.*

The district court concluded the Display Act violated equal protection because it erroneously rejected the Legislature's purpose to commemorate the Ten Commandments' place in our history. App. 4003; R. Doc. 345, at 144; *see supra* 32-34. And it misapplied the highly deferential rational-basis review; there is some "conceivable state of facts" that supports the enacted purpose. *Danker*, 53 F.4th at 423 (citation omitted). Plaintiffs therefore failed to prove an equal-protection violation too.

## Conclusion

For these reasons, the Court should reverse the grant of Plaintiffs' summary-judgment motions and denial of the Secretary's summary-judgment motion.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov
noah.watson@arkansasag.gov

Hiram S. Sasser, III
David Hacker
Jordan Lorence
Roger Byron
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
dhacker@firstliberty.org
jlorence@firstliberty.org
rbyron@firstliberty.org

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,991 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point proportionally spaced font, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/Autumn Hamit Patterson*

## Certificate of Service

I certify that on July 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/Autumn Hamit Patterson*