No. 26-1829

# In the United States Court of Appeals for the Eighth Circuit

DONNA CAVE; PAT PIAZZA; EUGENE LEVY, RABBI; GALE BOOTH STEWART; ANNE ORSI; TERESA GRIDER; ARKANSAS SOCIETY OF FREETHINKERS; FREEDOM FROM RELIGION FOUNDATION; AMERICAN HUMANIST FOUNDATION,

*Plaintiffs-Appellees*,

THE SATANIC TEMPLE; DOUG MISICKO, ALSO KNOWN AS LUCIEN GRAVES; ERIKA ROBBINS,

*Intervenors-Appellees*,

*v.*

COLE JESTER, ARKANSAS SECRETARY OF STATE, IN HIS OFFICIAL CAPACITY (ORIGINALLY NAMED AS MARK MARTIN AND JOHN THURSTON),

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Arkansas - Central
No. 4:18-cv-00342

## BRIEF OF AMICI CURIAE SENATOR TED CRUZ AND CONGRESSMAN NATHANIEL MORAN IN SUPPORT OF APPELLANT AND FOR REVERSAL

Heather Gebelin Hacker
HACKER STEPHENS LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Amici Curiae*

## Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), there is no parent corporation or publicly held corporation that owns 10% or more of stock of any *amici curiae* described herein.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
*Counsel for Amici Curiae*

## Table of Contents

Page(s)

Corporate Disclosure Statement ........................ i
Table of Authorities ........................ iii
Introduction and Interest of Amici Curiae ........................ 1
Argument ........................ 3
I. Permitting Offended Observers to Challenge Government Actions Endangers the Separation of Powers. ........................ 4
A. Standing doctrine requiring a concrete injury to a legally protected interest protects against the unelected judiciary exercising power the Constitution does not grant. ........................ 5
B. It has long been established that mere disagreement with government action is not a concrete injury for standing purposes. ........................ 7
II. Decisions Permitting Offended Observer Standing in Establishment Clause Cases Are No Longer Good Law. ........................ 8
A. Offended observer standing is rooted in the Supreme Court's now-overruled decision in *Lemon v. Kurtzman*. ........................ 8
B. *Kennedy v. Bremerton School District* overruled *Lemon* and reshaped Establishment Clause claims. ........................ 10
C. The district court erred by finding standing despite the impact *Kennedy* had on Establishment Clause claims. ........................ 12
D. The Court should take this opportunity to correct this Circuit's Establishment Clause standing doctrine and realign it with Article III and binding precedent. ........................ 14
III. Even if the Plaintiffs Had Standing, Their Establishment Clause Claim Fails on the Merits in Light of *Kennedy*. ........................16
Conclusion ........................ 188
Certificate of Service ........................19
Certificate of Compliance ........................19

# Table of Authorities

Page(s)

**Cases**

*ACLU of Nebraska Foundation v. City of Plattsmouth, Neb.*,
358 F.3d 1020 (8th Cir. 2004) ........ 9, 12
*ACLU of Nebraska Foundation v. City of Plattsmouth, Neb.*,
419 F.3d 772 (8th Cir. 2005) (en banc) ........ 4, 9
*Allen v. Wright*,
468 U.S. 737 (1984) ........ 5, 6, 7
*Am. Civ. Liberties Union of Ohio Foundation, Inc. v. Ashbrook*,
375 F.3d 484 (6th Cir. 2004) ........ 15
*Am. Legion v. Am. Humanist Ass'n*,
588 U.S. 29 (2019) ........ 2, 3, 9, 11, 14, 16
*Barnes-Wallace v. San Diego*,
530 F.3d 776 (9th Cir. 2008) ........ 15
*Cave v. Jester*,
--- F. Supp.3d ---, 2026 WL 916187 (E.D. Ark. 2026) ........ 3, 12, 13
*Chicago & Grand Trunk R. Co. v. Wellman*,
143 U.S. 339 (1892) ........ 6
*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 5
*Cnty. of Allegheny v. Am. Civ. Liberties Union, Greater Pittsburgh Chapter*,
492 U.S. 573 (1989) ........ 10
*Diamond v. Charles*,
476 U.S. 54 (1986) ........ 7
*Doe v. Tangipahoa Par. Sch. Bd.*,
494 F.3d 494 (5th Cir. 2007) ........ 15
*Firewalker-Fields v. Lee*,
58 F.4th 104 (4th Cir. 2023) ........ 16
*Freedom From Religion Foundation, Inc. v. Mack*,
49 F.4th 941 (5th Cir. 2022) ........ 14
*Freedom From Religion Foundation, Inc. v. Obama*,
641 F.3d 803 (7th Cir. 2011) ........ 14

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001) .......... 11
*Hilsenrath on behalf of C.H. v. Sch. Dist. of Chathams*,
136 F.4th 484 (3d. Cir. 2025) .......... 16
*Kennedy v. Bremerton School Dist.*,
597 U.S. 507 (2022) .......... 2, 10, 11, 12, 13, 16, 17
*Kondrat'yev v. City of Pensacola*,
949 F.3d 1319 (11th Cir. 2020) .......... 8
*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
508 U.S. 384 (1993) .......... 10, 11
*Lemon v. Kurtzman*,
403 U.S. 602 (1971) .......... 2, 9
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 5, 6, 13
*Lynch v. Donnelly*,
465 U.S. 668 (1984) .......... 1, 9
*Massachusetts v. Mellon*,
262 U.S. 447 (1923) .......... 6
*Nathan v. Alamo Heights Indep. Sch. Dist.*,
173 F.4th 576 (5th Cir. 2026) (en banc) .......... 4, 16
*Penkoski v. Bowser*,
486 F. Supp. 3d 219 (D.D.C. 2020) .......... 15
*Red River Freethinkers v. City of Fargo*,
679 F.3d 1015 (8th Cir. 2012) .......... 4, 9, 13
*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) .......... 6
*Town of Greece v. Galloway*,
572 U.S. 565, 576 (2014) .......... 11, 16
*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) .......... 7, 8, 14
*Van Orden v. Perry*,
545 U.S. 677 (2005) .......... 2, 4, 16, 17

*Warth v. Seldin*,
422 U.S. 490 (1975) ........................................................................ 6
*Washegesic v. Bloomingdale Pub. Schs.*,
33 F.3d 679 (6th Cir. 1994).................................................................15
*Whitmore v. Arkansas*,
495 U.S. 149 (1990)......................................................................... 7
*Zorach v. Clauson*,
343 U.S. 306 (1952)......................................................................... 1

## Constitutional Provisions

U.S. Const. am. I............................................................................. 9

## Other Authorities

J. Davis & N. Reaves, *Fruit of the Poisonous Lemon Tree: How the Supreme Court Created Offended-Observer Standing, and Why It's Time for It To Go*, 96 Notre Dame L. Rev. Reflection 25 (2020) ............................................ 8

## Introduction and Interest of Amici Curiae

Amici curiae[1] are Senator Ted Cruz (TX) and Congressman Nathaniel Moran (TX-01), members of the United States Congress. Amici wish to preserve the "unbroken history of official acknowledgment by all three branches of government of the role of religion in American life. . . ." *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). As elected representatives of "a religious people whose institutions presuppose a Supreme Being," *Zorach v. Clauson*, 343 U.S. 306, 313 (1952), Amici participate in the governance of this Nation under the watchful eyes of Moses—the central and only full-frontal frieze among the lawgivers adorning the House Chamber—and pass under the words "In God We Trust" and "Annuit Coeptis" (God Favors Our Undertakings) when entering the Senate Chamber. We may seek divine wisdom as we perform our duty of representing the American people in the Capitol Prayer Room, which also contains the inscription, "Preserve me, O God: for in thee do I put my trust," from Psalm 16:1. And when the United States Supreme Court hears a case challenging a law that we passed, it does so once again under the eyes of Moses, this time holding the tablets bearing the Ten Commandments, both inside the courtroom and on the building's exterior. The tablets themselves adorn the doors leading into

[1] Pursuant to Rule 29(a)(2), no motion for leave to file is necessary as all parties have consented to the filing of this brief. Pursuant to Rule 29(a)(4)(E), undersigned counsel affirms that no counsel for any party authored this brief in whole or in part and that no person or entity other than amici or their counsel made a monetary contribution intended to fund the preparation and submission of this brief.

the courtroom where the highest level of judicial power under our Constitution is exercised.

Plainly, our Nation's history and tradition acknowledge Moses as a lawgiver and the Ten Commandments as a historical foundation of our system of laws. *See Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019). All three branches of government "have recognized the role the Decalogue plays in America's heritage," and public displays of the Ten Commandments "bespeak the rich American tradition of religious acknowledgments," *Van Orden v. Perry*, 545 U.S. 677, 689, 690 (2005) (plurality op.). These acknowledgments are on display for any visitor to Washington, D.C. to see. And "acknowledgments of the role played by the Ten Commandments in our Nation's heritage are common throughout America." *Id.* at 688. Arkansas acknowledged this history with a monument on the grounds of the State Capitol. And with the long overdue overruling of *Lemon v. Kurtzman*, 403 U.S. 602 (1971), in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), it is legally able to do so.

The contrary conclusions by the district court in this case are both alarming and stuck in a *Lemon*-flavored past. In our view, they threaten the tradition of public acknowledgment of our country's religious heritage and the foundation of our laws—both on the merits, and by entertaining the Plaintiffs' claims based on an injury merely amounting to offense at observing a monument depicting a historical foundation of our laws. Amici are concerned that the interpretation of the Establishment Clause and Article III standing doctrine advocated by Appellees would jeopardize federal displays that incorporate religious words and images, including several in the U.S. Capitol, and thereby disrespect the shared history and values those displays

commemorate. The decisions also threaten to disrupt the proper balance between the judicial and legislative branches of government. And as members of Congress, we are particularly concerned when the unelected judiciary usurps government power the Constitution reserves for the duly elected representatives of the people.

As Justice Gorsuch warned in *American Legion*, if individuals "could invoke the authority of a federal court to forbid what they dislike for no more reason than they dislike it . . . Courts would start to look more like legislatures, responding to social pressures rather than remedying concrete harms, in the process supplanting the right of the people and their elected representatives to govern themselves." 588 U.S. at 80–81 (Gorsuch, J., concurring). If mere "offense" suffices for standing to challenge a law, any number of legitimate legislative actions could be held up for years in litigation, which is obviously of concern to Amici. The Court should take this opportunity to clarify that more is demanded to satisfy Article III's requirements to invoke judicial authority, even in the Establishment Clause context.

## ARGUMENT

The district court ignored significant changes in Establishment Clause jurisprudence when it held that plaintiffs offended by a government display of the Ten Commandments have standing to challenge it, and that such a display violates the First Amendment. *Cave v. Jester*, --- F. Supp.3d ---, 2026 WL 916187 (E.D. Ark. 2026). Standing for offended observers has never been embraced by the Supreme Court, and was instead squeezed by lower courts directly from *Lemon*, a decision that no longer has any import in this Court's jurisprudence. Egregiously, the district court acknowledged that the Supreme Court said *Lemon* had been *abrogated*, but since it

did not use the magic word "overruled," the district court still felt free to apply it. *Id.* at 26, 37-38. But as the en banc Fifth Circuit recently held, "[T]here is no plausible way to read *Kennedy* as somehow preserving *Lemon* for certain cases. . . *Kennedy* definitively announced the *Lemon* test has been 'abandoned.'". . . Because we do not have the option of ignoring the Supreme Court's express directives, we cannot continue applying *Lemon*." *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 592 (5th Cir. 2026) (en banc). And despite claiming to be bound by this Court's precedent, the district court still applied *Lemon* even though this Court declined to apply it in Ten Commandments display cases long before *American Legion* and *Kennedy*. *See Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1017-18 (8th Cir. 2012) (citing *ACLU of Nebraska Foundation v. City of Plattsmouth, Neb.*, 419 F.3d 772, 778 n.8 (8th Cir. 2005) (en banc) and *Van Orden*, 545 U.S. at 685-86). This Court should take the opportunity to clarify that its precedent regarding both standing and the merits of Establishment Clause claims aligns with the Supreme Court's rulings in *American Legion* and *Kennedy*, including their rejection of any continued application of *Lemon*.

## I. Permitting Offended Observers to Challenge Government Actions Endangers the Separation of Powers.

Standing may seem to some like an overly technical legal issue. But as this Court knows, proper observation of the limits on standing, and on the federal court's jurisdiction, should be of concern to all Americans because it strikes directly at the heart of the separation of powers. And the separation of powers—or the idea that the three branches of our government must adhere to their constitutionally prescribed spheres

when exercising government power—is fundamental to our system of government. As Members of Congress, we are particularly concerned when the unelected judiciary usurps powers that are meant to be exercised by the people's duly elected representatives. As we explain below, permitting individuals to challenge government actions merely because they disagree with them or are offended by them violates this principle because without a concrete harm to a plaintiff's legally protected interest, courts are deciding merely generalized or political grievances that are better left to the legislative branch to address.

### A. Standing doctrine requiring a concrete injury to a legally protected interest protects against the unelected judiciary exercising power the Constitution does not grant.

The Constitution limits the judicial power to deciding "Cases" and "Controversies." U.S. Const. art. III § 2. Federal courts may decide only those cases and controversies that the Constitution and Congress have authorized them to hear. And "the irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The injury-in-fact test requires a plaintiff to prove "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up).

"The law of Article III standing," the Supreme Court has said, "is built on separation-of-powers principles, [and] serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Standing questions "must be answered by reference to the

Art[icle] III notion that federal courts may exercise power only 'in the last resort, and as a necessity.'" *Allen v. Wright*, 468 U.S. 737, 752 (1984) (quoting *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). When "a court is asked to undertake constitutional adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury . . . serves the function of insuring that such adjudication does not take place unnecessarily." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

By contrast, "[t]o permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'" *Id.* at 222. And without standing requirements, "courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Unless a plaintiff has a concrete, particularized injury to a legally protectable interest, his complaint is merely a "generalized grievance," which is nonjusticiable by federal courts. A litigant "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–574; *Allen,* 468 U.S. at 754 ("an asserted right to have the Government act in accordance with law is not sufficient, standing alone,

to confer jurisdiction on a federal court"); *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally.").

### B. It has long been established that mere disagreement with government action is not a concrete injury for standing purposes.

In general, the Supreme Court has been adamant that disagreement with government action is insufficient to satisfy the concrete-injury requirement. "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). That is why a plaintiff who challenges a government action that does not directly affect him will not have standing—the claimed injury amounts to nothing more than disapproval. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149 (1990) (third party lacks standing to challenge the validity of a death sentence imposed on a capital defendant who did not appeal).

Nor does "stigmatic injury" or "denigration" satisfy the concrete-injury requirement. *See, e.g.*, *Allen*, 468 U.S. 737 (plaintiffs challenging tax-exempt status of racially discriminatory schools lacked standing based on stigmatic injury). Put simply, the "psychological consequence" of "observation of conduct with which one disagrees," even regarding religion, is "not an injury sufficient to confer standing under Art. III." *Valley Forge Christian Coll. v. Americans United for Separation of*

*Church & State, Inc.*, 454 U.S. 464, 485 (1982). The "Supreme Court has long rejected allegations of offense, fear, and stigma as sufficient to establish standing." *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1337 (11th Cir. 2020) (Newsom, J., concurring). This is also consistent with a historical understanding of Article III. J. Davis & N. Reaves, *Fruit of the Poisonous* Lemon *Tree: How the Supreme Court Created Offended-Observer Standing, and Why It's Time for It To Go*, 96 Notre Dame L. Rev. Reflection 25, 35–36 (2020) ("Under a historical understanding of Article III," "psychological offense resulting merely from seeing [challenged government] action does not qualify" as "concrete harm").

Despite this, courts have permitted plaintiffs to challenge government action in the Establishment Clause context just because the plaintiff disagrees with, or is offended by, religious content or symbols. But as Justice Thomas has observed, "[o]ffended observer standing appears to warp the very essence of the judicial power vested by the Constitution. Under Article III, federal courts are authorized 'to adjudge the legal rights of litigants in actual controversies,' not hurt feelings." *City of Ocala, Florida v. Rojas*, 143 S. Ct. 764, 767 (2023) (Thomas, J., dissenting from denial of certiorari) (quoting *Valley Forge*, 454 U.S. at 471).

## II. Decisions Permitting Offended Observer Standing in Establishment Clause Cases Are No Longer Good Law.

### A. Offended observer standing is rooted in the Supreme Court's now-overruled decision in *Lemon v. Kurtzman*.

If the Supreme Court has generally disallowed offense to suffice for constitutional injury, even with regard to Establishment Clause claims, why have courts

seemingly given it a free pass in the Establishment Clause context, as the district court did here? "Lower courts invented offended observer standing for Establishment Clause cases in the 1970s in response to [the Supreme Court's] decision in *Lemon v. Kurtzman*, 403 U.S. 602 (1971)." *Am. Legion*, 588 U.S. at 84 (Gorsuch, J., concurring in the judgment). *Lemon* announced a three-part test for determining the constitutionality of state action in the context of the Establishment Clause: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally the statute must not foster 'an excessive government entanglement with religion.'" 403 U.S. at 612-613 (citations omitted). And lower courts reasoned that if the Establishment Clause forbids anything a reasonable observer would view as an endorsement of religion, then such an observer must be able to sue based on his offense at such endorsement. *Cf. City of Plattsmouth*, 419 F.3d at 775 n.4 (affirming standing reasoning of *ACLU Nebraska Foundation v. City of Plattsmouth, Neb.*, 358 F.3d 1020, 1026-31 (8th Cir. 2004)); *Red River Freethinkers*, 679 F.3d at 1023-24.

By defining an Establishment Clause offense so broadly, *Lemon* launched thousands of lawsuits like the *City of Plattsmouth* case, challenging everything from war memorials and legislative prayers to holiday decorations and Ten Commandments monuments, allegedly because they constitute an "establishment of religion" in violation of the First Amendment. U.S. Const. am. I. Infamously, the Supreme Court's decision in *Lynch*, 465 U.S. 668, established the so-called "Reindeer Rule," which was that public holiday displays could escape constitutional downfall under *Lemon* so long as enough reindeer and other "secular" symbols of the Christian hol-

iday of Christmas accompanied angels or a nativity. The Supreme Court added further confusion by embracing an offshoot of the *Lemon* test called the "endorsement" test, which held that the *Lemon* test was not met if the government action was anything that a "reasonable observer" might perceive as "endorsing" religion. *Cnty. of Allegheny v. Am. Civ. Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 620–621, (1989) (opinion of Blackmun, J.); *id.*, at 631 (O'Connor, J., concurring in part and concurring in judgment).

Unsurprisingly, "these tests 'invited chaos' in lower courts, led to 'differing results' in materially identical cases, and created a 'minefield' for legislators." *Kennedy*, 597 U.S. at 534 (citation omitted). But courts continued to apply them. Over the years, then, *Lemon* opened courthouse doors to anyone who perceived and was offended by an "endorsement" of religion. Under *Lemon*, instances of public commemoration of the country's religious foundations (including the examples in the U.S. Capitol and the Supreme Court listed above in the Introduction) were at risk if any offended observer challenged them. But *Lemon* is no more, and Establishment Clause violations are no longer found where government "endorses," "advances," or "inhibits" religion. That changes the game for the display of Ten Commandments monuments like Arkansas's, and for Establishment Clause jurisprudence itself.

### B. *Kennedy v. Bremerton School District* overruled *Lemon* and reshaped Establishment Clause claims.

After decades of *Lemon*'s repeated reanimation like a "ghoul in a late-night horror movie," *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398

(1993) (Scalia, J., concurring in the judgment), and its continued chaotic application by lower courts, the Supreme Court mortally wounded it in *American Legion* and finally "killed and buried" it in *Kennedy*, *id. See Am. Legion*, 588 U.S. at 49-52; *Kennedy*, 597 U.S. at 534-35. In doing so, the Supreme Court reshaped claims under the Establishment Clause. Post-*Kennedy*, courts should no longer look for religious purpose, perceived endorsement or advancement of religion, or entanglement. *Kennedy* "put to rest any question about *Lemon*'s vitality." *City of Ocala*, 143 S. Ct. at 765 (Gorsuch, J., statement respecting the denial of certiorari). "The Court has since made plain, too, that the Establishment Clause does not include anything like a 'modified heckler's veto, in which . . . religious activity can be proscribed" based on 'perceptions' or 'discomfort.'" *Kennedy*, 597 U.S. at 534 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001)). Rather, "[i]n place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings,' and "'faithfully reflect the understanding of the Founding Fathers.'" *Id.* at 535 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576, 577 (2014)).

Rather than prohibiting any public acknowledgment of religion resulting in mere offense, "coercion . . . was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Id.* at 537. Thus, "consistent with a historically sensitive understanding of the Establishment Clause," the government may not "make a religious observance compulsory," "coerce anyone to attend church," or "force citizens to engage in a formal religious exercise." *Id.* (citations omitted). Acknowledging the role religion played in our coun-

try's founding and our system of laws is consistent with practices at the time of the Founding and ratification of the First Amendment. *Am. Legion*, 588 U.S. at 61-63. While that may offend some, the Supreme Court has made it clear: "offense does not equate to coercion," and therefore does not violate the Establishment Clause. *Kennedy*, 597 U.S. at 539 (citations omitted).

Further, the Supreme Court's reemphasis on coercion as the essence of what the Establishment Clause, as written and understood by the Framers, was meant to protect against turns this Court's decision in *City of Plattsmouth* on its head. Indeed, *City of Plattsmouth* cited numerous outdated decisions for its conclusion that government coercion is *not* a required element of an Establishment Clause claim. 358 F.3d at 1028-29. That conclusion is no longer tenable under *Kennedy*.

### C. The district court erred by finding standing despite the impact *Kennedy* had on Establishment Clause claims.

By evaluating the Plaintiffs' standing under *Lemon*-era standing doctrine, the district court ignored *American Legion* and *Kennedy* and the sea-change they affected on Establishment Clause jurisprudence, which clearly affects standing doctrine as well. The district court brushed Arkansas's standing arguments aside because it claimed that the notion that "offended observer" standing is invalid is not based on "controlling precedent," and *Kennedy* did not "mention standing." *Cave*, 2026 WL 916187, at *26, *27.

But that is wrong. *Kennedy* is a binding majority opinion, and it makes clear that mere offense at religious content or symbols is not a legally protected interest under the Establishment Clause. Thus, it follows from the Court's opinion that any alleged

injury sufficing to provide standing under the Establishment Clause must include coercion to engage in religious activity. Even if *Kennedy* did not "mention standing," *id.* at *27, by redefining what legal interest the Establishment Clause protects—religious coercion rather than mere offense at religion or perceived endorsement—*Kennedy* plainly affected standing doctrine, which requires a concrete injury to a legally protected interest. *Lujan*, 504 U.S. at 560. Even if this Court were correct that "direct and unwelcome personal contact" with an alleged violation of the Establishment Clause suffices as an injury for standing purposes, *Red River Freethinkers,* 679 F.3d at 1023, government monuments depicting historical religious content like the Ten Commandments do not violate the Establishment Clause under *American Legion* and *Kennedy*. That is why Justice Gorsuch stated that, post-*Kennedy*, he "expect[s] lower courts will recognize that offended observer standing has no more foundation in the law than the *Lemon* test that inspired it." *City of Ocala,* 143 S. Ct. at 765 (Gorsuch, J., statement respecting the denial of certiorari). The district court erred by disregarding *Kennedy*'s clear repudiation of *Lemon* and offense-based Establishment Clause violations.

Plaintiffs here cannot allege that the passive display of the Ten Commandments on the grounds of the State Capitol forces them to participate in religious practices or attend church, just as Coach Kennedy's personal prayer at the fifty-yard line did not force students to participate. Merely being offended by the display's presence does not amount to coercion. And as the Supreme Court has now held, the "legally protected interest" the Establishment Clause protects against, and which therefore

must underlie any claim of injury giving rise to standing, is religious coercion. *See Kennedy*, 597 U.S. at 537, 539.

### D. The Court should take this opportunity to correct this Circuit's Establishment Clause standing doctrine and realign it with Article III and binding precedent.

Even if *Kennedy* somehow did not affect standing, its different perspective on Establishment Clause claims justifies embracing a fresh perspective on standing, especially since, as explained above, Establishment Clause standing was already an exception to normal standing doctrine. And there is nothing other than *Lemon*-era circuit precedent standing in the way. Though the Supreme Court has made several non-precedential "drive by" rulings adjudicating Establishment Clause claims without questioning offended observer standing, it never embraced it. *Am. Legion*, 588 U.S. at 82- 83 (Gorsuch, J., concurring in the judgment). In fact, it expressly repudiated it in *Valley Forge*. 454 U.S. at 485; *see also City of Ocala*, 143 S. Ct. at 767 (Thomas, J., dissenting from denial of certiorari) ("*Valley Forge* could not have been clearer that a relaxed standing doctrine 'does not become more palatable when the underlying merits concern the Establishment Clause.'" (quoting *Valley Forge*, 454 U.S. at 489). Thus, there is no precedent binding on this Court which would tie its hands on limiting offended observer standing in light of *Kennedy*.

Further, many judges have often pointed out that offended observer standing is an aberration that is inconsistent with Article III. *See Freedom From Religion Foundation, Inc. v. Mack*, 49 F.4th 941, 949 (5th Cir. 2022) (Smith, J.) ("[T]he law of Establishment Clause standing is hard to reconcile with the general principle that standing

is absent where a plaintiff has only a generalized grievance shared in substantially equal measure by all or most citizens" (internal quotation marks omitted)); *Freedom From Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011) (Easterbrook, C. J.) ("[H]urt feelings differ from legal injury"); *Barnes-Wallace v. San Diego*, 530 F.3d 776, 795 (9th Cir. 2008) (Kleinfeld, J., dissenting) ("[B]eing there and seeing the offending conduct does not confer standing"); *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 500 (5th Cir. 2007) (DeMoss, J., specially concurring) (explaining that offended observer standing "opens the courts' doors to a group of plaintiffs who have no complaint other than they dislike any government reference to God"); *Am. Civ. Liberties Union of Ohio Foundation, Inc. v. Ashbrook*, 375 F.3d 484, 497 (6th Cir. 2004) (Batchelder, J., dissenting) (explaining that standing based on "unwelcome contact" with governmental religious displays is "inconsistent with . . . *Valley Forge*"); *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679, 684–685 (6th Cir. 1994) (Guy, J., concurring) (explaining that offended observer standing "establishe[s] . . . a class of 'eggshell' plaintiffs of a delicacy never before known to the law"); *Penkoski v. Bowser*, 486 F. Supp. 3d 219, 231 (D.D.C. 2020) (McFadden, J.) (explaining that offended observer standing "cannot be squared with" *Valley Forge*).

Even if the Court agrees with the district court's claim that *Kennedy* did not touch standing, there is no reason why the Court should continue down the *Lemon*-inspired path of permissive standing for Establishment Clause plaintiffs when *Lemon* is no longer good law and there is no binding Supreme Court precedent requiring it. The Court should take this opportunity to right the ship and bring the Court's standing doctrine under the Establishment Clause into alignment with standing doctrine

for all other types of claims. Based on Justice Gorsuch and Justice Thomas's explicit statements since *American Legion*, and the Court's opinion in *Kennedy*, there should be no doubt that the Supreme Court would support such a decision.

## III. Even if the Plaintiffs Had Standing, Their Establishment Clause Claim Fails on the Merits in Light of *Kennedy*.

*American Legion* and *Kennedy* show that the Plaintiffs' claims fail on the merits, even if the Court agreed with the district court that the Plaintiffs have standing. Those decisions replaced the *Lemon* test with analysis "focused on original meaning and history." *Kennedy*, 597 U.S. at 536. The Establishment Clause "must be interpreted 'by reference to historical practices and understandings.'" *Am. Legion*, 588 U.S. at 61 (quoting *Town of Greece*, 572 U.S. at 576. "'[T]he line' that courts and governments 'must draw between the permissible and the impermissible' has to 'accor[d] with history and faithfully reflec[t] the understanding of the Founding Fathers.'" *Kennedy*, 597 U.S. at 536 (quoting *Town of Greece*, 572 U.S. at 577). "Where categories of monuments, symbols, and practices with a longstanding history follow in that tradition, they are likewise constitutional." *Am. Legion*, 588 U.S. at 63. After all, "it would be incongruous to interpret the Establishment Clause as imposing more stringent First Amendment limits on the states than the draftsmen imposed on the Federal Government." *Van Orden*, 545 U.S. at 688 (citation omitted).

Three sister circuits have distilled *Kennedy*'s analysis to "this inquiry: Have plaintiffs 'prov[en] a set of facts that would have historically been understood as an establishment of religion?'" *Nathan*, 173 F.4th at 594 (quoting *Hilsenrath on behalf of C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 n.54 (3d. Cir. 2025) (quoting

*Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023))). The answer here must be no. As the Supreme Court stated in *Van Orden* when it upheld the Ten Commandments monument at the Texas State Capitol, "acknowledgments of the role played by the Ten Commandments in our Nation's heritage are common throughout America," and "displays and recognitions of the Ten Commandments bespeak the rich American tradition of religious acknowledgments." 545 U.S. at 688, 689. It does not matter *when* a display is erected so long as it follows in that tradition and does not resemble a Founding-era establishment of religion. As discussed above, *Kennedy* acknowledged that protection against religious coercion—such as "mak[ing] a religious observance compulsory," "coerc[ing] anyone to attend church," or "forc[ing] citizens to engage in a formal religious exercise," is "consistent with a historically sensitive understanding of the Establishment Clause." 597 U.S. at 537. But as *Kennedy* squarely held, individuals merely passively observing religious content, without more, is not coercive. Again, "offense does not equate to coercion," and therefore does not violate the Establishment Clause. *Id.* at 539 (citations omitted). Plaintiffs may be offended by Arkansas's Ten Commandments monument, but that does not mean it violates the Constitution under Supreme Court precedent.

## CONCLUSION

The district court's opinion should be reversed and the permanent injunction vacated.

Respectfully submitted.

/s/Heather Gebelin Hacker
Heather Gebelin Hacker
HACKER STEPHENS LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Amici Curiae*

## Certificate of Service

I hereby certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4660 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker